## Wytheville.

BREEDING V. DAVIS AND ALS.

July 26th, 1883.

1. HUSBAND AND WIFE—*Common law.*—Before issue born, husband and wife *in her right* are jointly seized during their joint lives of a freehold in her fee simple lands. After issue born alive, in such lands he becomes tenant by the curtesy *initiate*, and holds an estate therein *in his own right*, which, after her death, *illo vivente* becomes an estate by the curtesy *consummate.*

2. IDEM.— *The married woman's act.*—By the act of 4th April, 1877, (Acts 1876–7, pages 333–4,) the wife's property is her separate estate, which she may possess, enjoy and devise as if *sole;* the husband must unite with her in alienating it, and if he refuse, the court will, if of opinion that her interests will be benefited thereby, cause . the absolute title thereto to be conveyed. No interest or estate in the wife's lands vests in husband during the coverture. But if, after issue born alive, he survive her, he has an estate by the curtesy in the *fee simple* lands of which she was seized, but made no alienation during the coverture. The act only protects the estate of the wife during her life, but does not after her death affect the law of succession as to her real or personal property.

3. IDEM—*Idem—Husband's creditor—Wife's vendee—Case at bar.*—On 11th April, 1877, there descended on E., wife of C., real estate in fee. Issue had been born alive of their marriage. D., a creditor of C., who was a non resident, levied an attachment on C.'s interest in that real estate, and sale thereof was decreed to pay a debt less than $500 in amount. Before sale C. and wife conveyed the real estate to B., who conveyed same with general warranty, and covenant to quiet title, purchase money withheld until its performance, to M. B. obtained an injunction to the sale.

HELD:

    1. The controversy is not concerning the debt of C. to D. The question is: "Where is the title to E.'s land vested?" The title

to her land is the issue. The jurisdiction of this court is undoubted.

2. C. has no interest or estate whatever in the land by reason of his marriage with E. The injunction should have been perpetuated.

3. The adjudications in the attachment suit in no way affect E. or her land, she having been no party to that suit.

4. Under the circumstances B. was entitled to bring this suit by reason of his subsisting interest in the subject matter.

Appeal from decree of circuit court of Pulaski county, rendered 2d November, 1882, in the cause therein pending of A. J. Breeding, plaintiff, against Wm. H. Davis and als., defendants. Randolph Clark died 11th April, 1877, seized of real estate in said county, whereof sixty-nine acres descended upon his daughter, Eliza L., the wife of Hardin L. Crum. Of their marriage there was issue born alive. In February, 1879, William H. Davis, a creditor of Crum, who was a non-resident of this state, brought an action at law against Crum to recover a debt of $122, and interest, had an order of publication executed, and levied an attachment on Crum's interest in said land. The said court, at its March term, 1879, ordered the sheriff to sell at public auction, in front of the courthouse of said county, *all the right, title and interest* of Hardin L. Crum in the land of Randolph Clark, deceased. The execution of this order was delayed until June, 1881. In the meantime, by deed dated 28th February, 1881, Crum and wife sold and conveyed said land to said A. J. Breeding. Soon afterwards Breeding brought this suit in chancery to enjoin the order of sale, the injunction being awarded 10th May, 1881. By deed dated 27th April, 1881, Breeding conveyed this land to Jackson Morfiss, with general warranty, and a special covenant to quiet the title thereto, and part of the purchase money withheld until grantor performs this covenant. Wm. H. Davis answered. By its said decree of 2d November, 1882, the said court decided that Hardin L. Crum had such an interest in the land in the bill mentioned, that the same might be sold for his debts, and decreed that the injunction be dissolved and the bill dismissed with costs. From this decree

said Breeding was allowed an appeal by one of the judges of this court.

*I. H. Larew*, and *Wysor & Gardner*, for the appellant.

H. L. Crum had *no interest* in the land mentioned in the bill subject to levy and sale for *his debts*. The right to the rents, issues and profits of his wife's land during their *joint lives*, acquired at common law by virtue of the marriage, never vested in Crum by reason of the statute. Acts 1876–7, pages 333–4.

Curtesy is preserved by the statute, but he had no title by the curtesy, because one of the four requisites was wanting, to-wit: the death of the wife. See Definition of Curtesy, Chitty's Blk. Com. book 2, margin, page 126.

*Tenancy by the curtesy initiate is destroyed by the act.* *Beech* v. *Miller*, 51 Illinois, 209; *Billing* v. *Baker*, 28 Barbr. 343; *Vallance* v. *Bausch*, 28 Barbr. 633; *Porch* v. *Fries*, 18 N. J. Eq. 208; Well's Sep. Prop. Married Women, page 106, section 38, page 617, section 682.

The husband "has now only a modified tenancy by the curtesy dependent upon a contingency, and *no estate* vests in him during the life of his wife." *Beech* v. *Miller*, 51 Illinois 209; *Martin* v. *Robson*, 65 Illinois 132; *Hill* v. *Chambers*, 30 Mich. 427; Well's Sep. Prop. Married Women, page 106, section 38.

This shadowy, uncertain estate, cannot be the subject of judicial cognizance and sale, and especially under our statute since its sale would interfere with and prevent the free alienation of her property by the wife—a right expressly secured to her by the statute. These rights were not adjudicated out of Mrs. Crum by the attachment proceedings since she was neither party nor privy to them. Breeding being her *bona fide* vendee, all the rights of Mrs. Crum in the land vested in him by his purchase, and having neither actual nor constructive notice of the attachment against the estate of H. L. Crum as a non-resident, he is in no wise bound or affected by it, by express provision of

statute whatever may have been the interest of Crum in the premises. Code 1873, chapter 182, section 5, page 1,166.

A court of equity has jurisdiction of this cause. The jurisdiction of a court of equity is unquestioned in the following instances:

1st. To save time, expense, and multiplicity of suits. Barton's Ch'y Pr., volume 1, section 17, page 68; *Oelrichs* v. *Spain*, 15 Wall. 211; *Rader and al.* v *Neal and al.*, 13 W. Va. 373; Sand's Suit in Equity, section 19, pages 13–14.

2d. To quiet title. *Morris* v. *Coleman*, 1 Rob. 500; 1st Story's Eq. Jur., section 711 a; Barton's Ch'y Pr., 67.

3d. Where matters arise subsequent to a judgment at law which makes its enforcement improper. Breeding being an innocent purchaser, without notice, after the judgment on the attachment, makes it improper that said judgment should be enforced, and gives rise to new rights which call for the interposition of a court of equity. *Royall, adm'r,* v. *Johnson and al.*, 1 Rand. 421; *Miller's ex'or* v. *Rice and al.*, 1 Rand. 438; *Crawford* v. *Thurman and al.*, 3 Leigh, 85.

4tb. To restrain sales, by injunction in all cases when inequitable, or where they may operate as a fraud upon the rights of third persons. Breeding being no party to the attachment proceedings, and at the time of the judgment on the attachment having no interest in the subject affected, but being a subsequent purchaser for value, without notice, any sale under the attachment order would be inequitable as to him and a fraud on his rights. 1st Story's Eq. Jur., section 954.

5th. Where there is not a plain, adequate, and complete remedy at law, or when it is doubtful whether there is or is not a remedy at law. *Goolsby, &c.,* v. *St. John*, 25 Gratt. 152; *Coffman* v. *Sangston and al.*, 21 Gratt. 269; *Wampler* v. *Wampler*, 30 Gratt. 454; *Martin's ex'x* v. *Lewis, ex'or*, 30 Gratt. 678; *Spottswood* v. *Higginbotham*, 6 Munf. 313.

6th. To prevent irreparable wrong. Minor's Institutes, volume 4, part 1, pages 7–109–333–473; Story's Eq. Jur., section

921 *et seq; Beveridge* v. *Lacy,* 3 Rand. 63; *Coalter* v. *Hunter,* 4 Rand. 58; *Miller* v. *Trueheart,* 4 Leigh, 568; High on Injunctions, sections 695 and 737.

7th. This court has jurisdiction of this cause, because it is a controversy concerning and involving the title to land. Constitution of Virginia, article 6, section 2; Code 1873, chapter 178, section 3, page 1137.

*Walker & Poage,* for the appellees.

First. The court has no jurisdiction of the appeal, the amount in controversy being less than five hundred dollars, and the title or boundaries of land not being concerned. *Lewis* v. *Long,* 3 Munf. 136; *Hutchinson* v. *Kellam,* 3 Munf. 202; *Skipwith* v. *Young,* 5 Munf. 276; 3 Gratt. 328; 6 Peters, 151; *Umberger and wife* v. *Watts,* 25 Gratt. 167, 176–180.

Second. The appellant has no standing in this court, because he had not at the time he filed his original bill, nor has he since had any title legal or equitable, to the land sought to be subjected to the lien of appellee's attachment. *Price* v. *Trash,* 30 Gratt. 522.

Third. The county court of Pulaski had jurisdiction of the parties and of the subject matter in the attachment proceedings of *Davis* v. *Crum,* and that court having in a " proceeding *in rem*," decreed that Crum had an interest in the lands sought to be subjected to sale, and having ordered a sale, these questions are *res adjudicata* as to Crum, and can only be impeached by a direct proceeding to set aside the judgment and decree of the county court. *Redd* v. *Jones,* 30 Gratt. 123 ; *Lancaster* v. *Wilson,* 27 Gratt. 624 ; *Cline* v. *Catron,* 22 Gratt.

Fourth. The appellant, Breeding, if a *bona fide* purchaser for value, at all, was a purchaser, *pendente lite,* and he does not in any form deny full notice of the proceedings in the case of *Davis* v. *Crum,* and having purchased with notice of the judgment and orders of the county court in that cause, he is bound thereby.

The judgment in favor of *Davis* v. *Crum* was actual notice of the lien. *Cirode* v. *Buchanan*, 22 Gratt. 205.

Fifth. The married· woman's act expressly provides that, "nothing in this act contained shall be construed to deprive the husband of curtesy in the wife's real estate," and if his right to curtesy remains unaffected by the act, it is a vested right of which he can only be deprived by his own act, or by the act of a court of equity, allowing him a fair compensation therefor. *Poindexter and ux* v. *Jeffries and als.*, 15 Gratt. 375–6 ; *Dold* v. *Geiger*, 2 Gratt. 98 *et seq.*

LACY, J., delivered the opinion of the court :

It is conceded that Hardin L. Crum had no other nor greater interest in the land of Randolph Clark than such as he might have acquired by marriage with his daughter, Eliza L. The appellees contend that by reason of the said marriage of the said Crum, he, having had children born alive of the marriage, was seized of a vested right of curtesy in the land of the wife, contingent upon her dying before him, which was curtesy initiate.

The appellant, on the other hand, contends that the act of the general assembly of Virginia passed April 4, 1877, known as "the married woman's act," had set apart the property of the wife, to be held free from any and every power of the husband, either to alienate or encumber the wife's land by any act, either directly or indirectly, and that no right of curtesy remains to the husband, except when he survives the wife. The said act provides: " That the real and personal property of any female, who may hereafter marry, and which she shall own at the time of her marriage, and the rent, issues and profits thereof, and any property, real or personal, acquired by a married woman, as a separate and sole trader, shall not be subject to the disposal of her husband, nor be liable for his debts, and shall be and continue her separate and sole property; and any such married

woman shall have power to contract in relation thereto, or for the disposal thereof, and may sue and be sued, as if she were a *feme sole*: provided, that her husband shall join in any contract, in reference to her real or personal property, other than such as she may acquire as a sole trader, and shall be joined with her in any action by or against her; and provided further, that nothing herein contained shall deprive her of the power to create, without the concurrence of her husband, a charge upon such sole and separate estate as she would be empowered to charge without the concurrence of her husband, if this act had not been passed.

2. All real and personal estate hereafter acquired by any married woman, whether by gift, grant, purchase, inheritance, devise, or bequest, shall be and continue her sole and separate estate, subject to the provisions and limitations of the preceding section, although the marriage may have been solemnized previous to the passage of this act; and she may devise and bequeath the same as if she were unmarried, and it shall not be liable to the debts or liabilities of her husband; provided, that nothing contained in this act shall be construed to *deprive the husband of curtesy* in the wife's real estate, to which he may be entitled by the laws now in force; and provided further, that the sole and separate estate created by any gift, grant, devise, or bequest shall be held according to the terms and powers, and be subject to the provisions and limitations thereof, and to the provisions and limitations of this act so far as they are in conflict therewith.

3. Any married woman may, in her own name, or by her next friend, file a bill in equity in any court having jurisdiction over the subject matter, in the event of her husband's refusing, or being incompetent to unite in the conveyance or disposal of her separate estate; and if the court shall be of the opinion that the interest of the married woman will be promoted by a sale thereof, may make such decree as may be necessary to convey absolute title thereto." Acts of Assembly, Sess. 1876–77, pp. 333, 334.

Let us consider what changes have been wrought in the law concerning the estates by the curtesy, which the husband may have in the lands of the wife, by the enactment of this statute.

. When a man takes a wife seized during the coverture of an estate of inheritance, legal or equitable, such as that the issue of the marriage may by possibility inherit it as heir to the wife, has issue by her born alive, and the wife dies, the husband surviving has an estate in the land for his life, which is called an estate by the curtesy. 2 Bl. Com. 126.

The requisites of an estate by the curtesy, then, are marriage, seisin of the wife, birth of issue alive, and death of the wife. 1 Lom. Dig. 77. The death of the wife is one of the requisites for curtesy. It is conceded, in this case—indeed, it is proved—that the wife is alive. During the wife's life, after issue born alive, the husband is said to be tenant by the curtesy initiate. Upon her death only, is he tenant by the curtesy consummate.

Before the passage of the act quoted above, the husband acquired by the marriage an estate in the wife's land, more or less ample according to the birth or failure of issue. By the marriage, while yet no issue had been born of the marriage, the husband acquired a freehold interest during the lives of himself and wife, and in all such freehold property of inheritance as she was seized of at the date of its celebration, and also that which she became seized of during the coverture. The nature of this estate was not that the husband alone, but he and his wife together, were in *right of the wife*, seized of a freehold estate of inheritance in her freehold lands of inheritance. As soon as issue was born, the estate of the husband was changed in its character. By the birth of issue, he became tenant by the curtesy initiate, and as such took an estate in the lands of his wife *in his own right.* The husband, upon the marriage, was entitled to take, during their joint lives, the rents and profits of her freeholds. Under the feudal law, before issue born, the husband and wife *did homage together*, but after issue born alive, he performed that service *alone*, and was called tenant by the curtesy

initiate.   Mr. Blackstone says: "The husband by the birth of the child becomes tenant by the curtesy initiate, and may do many acts to charge the lands, but his estate is not consummate until the death of the wife, which is the fourth and last requisite to make a complete tenant by the curtesy."

In this case, the wife being alive, it is not contended that the estate of tenant by the curtesy in the husband has been completed.   But the circuit court held, as we have seen, that the husband had a present vested interest in the wife's lands, such as could be sold during the wife's life, and decreed the sale of this supposed interest of the husband in his wife's land.

Now what was that interest?   Did he have "a freehold interest, such as has been described above, during the joint lives of himself and wife," which would have enabled him to take during their joint lives the rents and profits of her freeholds? That cannot be successfully contended, for, by the act of assembly, cited above, the real and personal property of the female, *and the rents, issues and profits* thereof, are declared not to be subject to the disposal of her husband, nor to be liable for his debts.

Can this supposed interest, which the circuit court decreed to be sold, be that tenancy by the curtesy initiate, by which, after issue born, the husband *did homage alone* to the lord, or held such an estate, which, Mr. Blackstone says, he might do many acts to charge?   Let us turn again to the act before referred to: By that act the property of the wife is not only set apart to her own use as to the rents and profits, but she is authorized to devise the same as if she were unmarried, and it is declared not to be liable to the debts or liabilities of her husband.   What possible interest or right of control can the husband be held to have in or to the lands of the wife under this statute *during the coverture?*   And as if to clear this question of every possible doubt, the third section of the said act provides, that "if the wife shall wish to absolutely dispose of her property her husband shall unite with her, and if he shall refuse, she may carry

him into court to compel him." When the court is to consider, not whether it is to the interest of the husband, but, the act declares, "and if the court shall be of opinion that the interest of the *married woman* will be promoted by a sale thereof, may make such decree as may be necessary to convey the *absolute* title thereto."

Now, note the language, "the *absolute* title"—after considering only, "whether it is to the interest of the married woman." Under a reasonable construction of this act, what estate is left in the husband during the coverture? and under the very language of the act, when is the interest or estate of the husband to vest upon these lands of the wife during the coverture?

The act, however, provides, "that nothing contained in this act shall be construed to deprive the husband of curtesy in his wife's real estate." What is meant by this provision—how is it to be construed? It should be construed so as to bring all parts of the act in harmony with each other, but not so as to destroy the act, and render all its provisions nugatory and valueless.

What is it the husband is not to be deprived of? Curtesy. What does curtesy mean? Mr. Bouvier says: "Curtesy is the estate to which by common law a man is entitled, on the *death of his wife*, in the lands or tenements of which she was seized in possession in fee simple, or in tail during their coverture, provided they have had lawful issue born alive which might have been capable of inheriting the estate," an estate to which he is entitled, at the death of his wife. If this provision is construed according to its very letter and terms, it is in harmony with the whole act, which would, in substance, then provide that the wife should have absolutely her property during her life, but that at her death her husband, if he survived her, might have curtesy in the land.

If, as is contended, the act means curtesy initiate, all the provisions of the act are thus repealed, and the terms of the act are made to conflict. For, if the property, both real and personal, and the rents and profits of the same are to be in the wife, and

the wife alone, they cannot, at the same time, be in the husband in *any* decree, *in his own right*, which, as we have seen, they would be, if he held a tenancy by the curtesy initiate. Then, we think, it is clear that the husband has no interest whatever in the lands of the wife during the coverture; and that in this case, therefore, Hardin L. Crum had no interest in his wife's lands, which the circuit court could sell, and that the circuit court erred in its decree complained of, whereby it dissolved the injunction, which restrained the sheriff from selling the lands of the wife to satisfy the debt of the husband, who had no interest in the land mentioned in the bill subject to levy and sale for his debts; the right to the rents, issues and profits of his wife's land never having vested in the said husband for the reasons stated above, *during their joint lives.*

The consequence of giving the wife, as the statute does, the control of her property free from the interference of her husband, is to postpone his right of curtesy until her death, and hence to render it contingent on his surviving her. See Wells on the Separate Property of Married Women.

The rights formerly acquired by the husband by virtue of the marriage, have almost all been taken away, and the disabilities of the wife have nearly all been removed. She now controls her own estate entirely, except that she cannot convey her real estate without her husband. *Beach* v. *Miller*, 51 Ill. 209. But by the Virginia statute, the court may compel her husband to unite in the conveyance, if it shall appear to be for *her* benefit. This is solely for her benefit, and to prevent her from squandering the estate. The husband has now only a modified tenancy by the curtesy, dependent upon a contingency, and *no estate* vests in the husband during the life of the wife. This is rather a shadowy estate. It is an interest which may possibly ripen into something tangible in the uncertain future.

Previous to the act, it could be sold on execution against the husband. Now the wife has the sole control of her real estate during her life, and the husband has no interest until her death.

This estate at best is now a bare possibility, dependent on his surviving his wife. *Martin* v. *Robson*, 65 Ill. 132; *Hill* v. *Chambers*, 30 Mich. 427.

At common law the death of the wife was necessary to the estate by the curtesy. It is one of the four requisites, as we have seen. But upon the birth of a child, another anomalous estate was created, called tenancy by the curtesy initiate. It was the increasing the estate for their joint lives, which he held before in his wife's lands, into an estate for his own life. The married woman's act, as it prevented his acquiring any interest in his wife's estate during her life, destroyed the estate of tenancy by the curtesy initiate.

The act, however, does not defeat the husband's estate by the curtesy at her death; *provided the estate has not been aliened before her death.* The act only protects her estate during her life, it does not, at her death, affect the law of succession as to real or personal estate. *Porch* v. *Fries*, 18 N. J. Eq. 208.

By the former law, the husband and wife were regarded as one person, and her legal existence and authority, to a degree, were lost or suspended—merged in that of her husband. She had not capacity to contract, nor had she administration of property. By the marriage, if the wife was seized of an estate of inheritance, the husband became seized thereof, taking the rents and profits during their joint lives, and by possibility during his life.

Now, he cannot enjoy the profits of her real estate without her permission. He has no control over her separate property. It is not subject to his disposal, control, or interference. All her separate property is under her sole control, to be held, owned, possessed and enjoyed by her the same as though she was *sole* and unmarried. The product of her labor is her exclusive property, and she may use and possess it free from the interference of her husband or his creditors. The intention of the legislature is plainly to abrogate the common law rule to a great degree, that the husband and wife were one person, and give her the right to manage her separate property and contract with

reference to it. Curtesy, as we have said, is preserved by the statute, but his wife is living; so Crum has no title by the curtesy. Whatever interest he has in his wife's lands is dependent upon a contingency—whether he shall survive his wife; and no estate can be said to vest in him during the life of the wife.

The appellant, Breeden, has become by purchase entitled to the wife's land, and although he has sold to a third person for value, he has sold under a general warranty and under a special covenant to quiet the title to this land, and the purchase money is withheld until he performs this covenant, and he is entitled to bring this suit by reason of his subsisting interest therein. It is objected by appellee, that as the debt of the husband, Crum, is less than $500, this court has no jurisdiction of this cause. But this is not a contest over, or indeed concerning the Crum debt to Davis, and it is of no concern to this case what is its amount, the question here is, where is the title to Mrs. Crum's land vested? If in Mrs. Crum, then the circuit court cannot sell it for Crum's debt. If the title is in Crum in any degree by reason of the coverture, then the circuit court may sell the interest of Crum in the land; so it cannot be maintained that the title to this land is not involved. The title to this land is exactly the question at issue, and the jurisdiction of this court undoubted.

As to the adjudications in the common law suit, they do not in any wise affect Mrs. Crum, nor any land of hers, as she was not a party to that suit, and in no way connected with it.

The decree complained of must be reversed and annulled, and the appellee perpetually enjoined from further proceedings under his judgment.

The decree is as follows:

This day came here the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion for

reasons stated in writing and filed with the record, that the circuit court erred in its decree herein of November 2d, 1882, in decreeing the sale of the land of Eliza L. Crum to satisfy a debt due by her husband; and this court is further of opinion that H. L. Crum did not have such an interest in the lands in the bill mentioned that the same might be sold for his debts, and the court is of opinion that the injunction awarded in the cause should be perpetuated, and the sheriff perpetually enjoined from executing the order of sale of the said land.

And the court being further of opinion that the said decree of the circuit court is wholly erroneous, it is therefore decreed and ordered that the said decree be reversed and annulled, and that the appellant recover against the appellee, Wm. H. Davis, his costs by him expended in the prosecution of his appeal aforesaid here.

And this court proceeding to enter such decree as the circuit court should have entered, it is decreed and ordered that the plaintiff's injunction be perpetuated, and that the defendant Wm. H. Davis, and Carper, the sheriff, be perpetually enjoined from selling the land in the bill mentioned, and that the plaintiff recover against the defendant, Davis, his costs by him expended in the prosecution of his case in the said circuit court, and the same is ordered to be certified to the said circuit court.

DECREE REVERSED.