# �civilian Richmond.

## BROWNE v. BOCKOVER.

### JANUARY 26th, 1888.

Absent, Lewis, P.

CURTESY—*Wife's lands—Husband's creditors.*—Estate by the curtesy consummate exists in husband in.wife's lands unaliened by her during her lifetime, *though devised by her will.* Such estate is subject to the liens of husband's creditors acquired during the coverture, in preference to the general liens of her creditors upon her real estate. Acts 1876-7, pp. 333-4; Acts 1877-8, p. 248.

Appeal from decrees of corporation court of Norfolk city, rendered May 7th and July 17th, 1885, in the chancery suit wherein Benjamin T. Bockover, suing for himself and all other creditors of Minia D. Whitehurst, &c., is plaintiff, and Jane E. Browne, administratrix of V. H. Browne, deceased, C. W. Whitehurst, in his own right and as executor of Minia D. Whitehurst and others, are defendants. The decree being in favor of the plaintiffs, the said Jane E. Brown, as such administratrix, obtained an appeal and *supersedeas.*

*Walke & Old,* for the appellant.

*Borland & Willcox,* and *Sharpe & Hughes,* for the appellees.

This is a contest between the creditors of the wife and those of the husband. The wife having a statutory separate estate

under the married woman's act, executed a joint note (with her husband) with intent to bind such separate estate. The creditors of the husband have judgments against him obtained before the death of the wife. The wife by her will devised the real estate, the subject of controversy, to the husband, who elects to take under the will. The court below decided that the separate real estate of the wife so devised, was first subject to the debts of the wife, contracted with the intent to bind her separate estate.

It is claimed by the appellants, that the tenancy by the curtesy of the husband in the wife's separate estate, became *consummate* at the wife's death, and that the lien of the judgments against the husband, attached to the separate estate, and is a prior lien to the extent of the curtesy, on the separate real estate of the wife.

I. If there had been no devise by the wife, the lien of the husband's creditors would not be prior to the claim of the wife's creditors.

Under the married woman's act as construed in the case of *Breeding* v. *Davis*, 77 Va., 639, "the husband has now only a modified tenancy by the curtesy, dependent upon a contingency, and *no estate* vests in the husband during the life of the wife. This is rather a shadowy estate. It is an interest which may possibly ripen into something tangible in the uncertain future."

The rationale of the opinion of the court is, that the statute having in express terms given to the wife the absolute control of her separate property, as if she were a *feme sole*, such an estate in the wife is wholly incompatible with the common law right of curtesy in the husband; therefore, the curtesy of the husband preserved by the statute in terms, must be a modified curtesy—a curtesy. which does not come into existence until the death of the wife, and which may be destroyed entirely by the act of his wife during her life.

This modified curtesy upon which a lien is claimed, came

into existence at the death of his wife; the liens of the husband's creditors could not attach to it until that time. But before this period, the wife under the powers conferred upon her by the statute has charged the separate estate with the payment of her debts.

We concede the proposition that under the decision of *Frank and Adler* v. *Lilienfield*, 33 Gratt., 377, and cases there cited, the general engagement of the wife does not create a specific lien on her separate estate. Such engagement does, however, create a charge upon her separate estate, which a court of equity will enforce by subjecting the *corpus* of personal estate, and rents and profits of the real estate *during the life of the wife*. These engagements of the wife are her debts, for which she (possibly) cannot be sued personally, but for which her separate estate is liable in the mode just indicated during her life.

She dies before the payment is enforced, does her death discharge the obligation incurred, and release her separate estate from liability for the debt? It is said in the petition of the appellant, quoting from the opinion in *Breeding* v. *Davis*, that the statute "does not at her death affect the law of succession as to real and personal estate." True, but does the heir, or devisee, in Virginia take real or personal estate of the ancestor free from the debts of the ancestor? One of the provisions of the law of succession to real estate in Virginia, is that such real estate is assets for the payment of the debts of the decedent. Code 1873, ch. 12, sec. 3. The language is: "*All real estate of any person who may hereafter die*," &c., it includes the real estate of a married woman as well as that of a man or a *feme sole*.

It may be said, however, that if the heir, or devisee, does take subject to the debts of the ancestor, the case here is one of the marital rights of the husband. True, but these rights under the decision of *Breeding* v. *Davis*, do not come into existence until the death of the wife; your rights come into being precisely at the same period that the rights of the heir or

devisee accrue. And it is a right in property which the statute declares is assets for the payment of the debts of the person who may die possessed thereof. "All real estate of any person," says the statute. It is to be remembered, too, that we are construing a statute which in speaking of the husband declares that the separate estate "*shall not be liable for his debts.*"

II. It is conceded in the petition, that the curtesy may be defeated by alienation, and the opinion in *Breeding* v. *Davis* is quoted: "The act, however, does not defeat the husband's estate by the curtesy at her death: *provided the estate has not been aliened before her death.*"

And, alienation is defined: "alienation may be made by deed; by matter of record, and by *devise.*" The married woman's act provides, section 2: "*and she may devise and bequeath the same as if she were unmarried*"; the power to devise is as absolute as the power to convey by deed. On the 17th day of January, 1881, just six days after the debt to the appellees was contracted, Mrs. Whitehurst made and published her will.

The wife then in her lifetime did alien the separate estate before her death, and thus defeat the tenancy by the curtesy of the husband. It is conceded that she had the power to defeat the curtesy by an act done in her lifetime, and the record shows that she did devise her separate estate.

It is claimed in the petition that the devise is not such an alienation as could affect the husband's curtesy. 1st. "Because the devise only took effect at the same time the curtesy grew into an estate"; the question is not when the instrument, whether deed or will took effect, but did the wife by deed or will dispose of this property so as to vest in the grantee or devisee the estate, did she exercise the power vested in her to direct the devolution of this property, whether to take effect *in presenti* or *in futuro;* if she did, then the property by virtue of the deed or will became that of another—and at the death of the wife there was no estate to which the curtesy could

attach—it had been aliened before the death of the wife. 2d. It is said, "that to hold that a devise by the wife is such an alienation as would deprive the husband of his curtesy, would be in violation of the express provisions of the law." Does it violate the provisions of the law any more than a deed made by the wife? The language is, "Nothing in this act shall be construed to deprive the husband of his curtesy in the wife's real estate." And yet the absolute power given the wife was such, that in *Breeding* v. *Davis, supra,* the court decided that a deed executed by the wife did deprive the husband of curtesy. The provision which protects the curtesy, would protect it from a deed as well as a will. It does not protect it from a deed, why should it protect it from the effect of a will?

III. By an examination of the will it will be seen that the wife devised the separate estate to her children, and upon the death of the children, remainder to her husband. The children predeceased the mother, so that the husband took the estate. The husband had the right, *it may be,* to elect, not to take under the will, and to claim his curtesy.

But he did elect to claim under the will, admitted it to probate, qualified as executor, and made a deed of his interest in a part of the real estate devised. His judgment creditors can only claim through him. If he has no interest in the real estate in controversy, which can be asserted against the appellee, his creditors can have none, for their lien is on the estate of the husband. 2 Barton's Chy. Pr., 880. *Combs* v. *Jordan,* 3 Bland's Chy. R., 284. S. C. 22, Am.-Dec., 248.

The husband then taking under the will takes subject to all debts which could be enforced against the testatrix. He has elected to take as devisee, and those who claim through him must likewise take subject to the debts of the testatrix. And this is all that the appellee claims, or that the court below decided. We submit that the decision is plainly right and should be affirmed.

FAUNTLEROY, J., delivered the opinion of the court.

The facts pertinent to this appeal, as disclosed by the record, are as follows:

C. W. Whitehurst and his wife, Minia D. Whitehurst, resided in the city of Norfolk, Virginia, and had issue which died during the coverture. Minia D. Whitehurst, the wife, died in March, 1881, leaving a will by which she bequeathed and devised to her said husband all her estate, real and personal; which will was duly admitted to probate and was recorded in the corporation court of Norfolk city, and of which said C. W. Whitehurst qualified as sole executor.

The said Minia D. Whitehurst was, during coverture, and at her death, seized of certain real estate in Norfolk city, and in Norfolk county, which she held as her separate estate, under the provisions of the act of the general assembly of Virginia, (Acts 1876–7, pp. 333–4,) known as the "married woman's act." Among this realty, was a vacant lot in Norfolk city, subject to the lien of a deed of trust, which was sold, and after satisfying the lien of the deed of trust, there was a surplus of proceeds left; and also a house and lot in Brambleton in Norfolk county.

In December, 1880, in the lifetime of Mrs. Minia D. Whitehurst and during the coverture, Jane E. Browne, administratrix of V. H. Browne, deceased, (appellant here) obtained a judgment against the said C. W. Whitehurst for $416 73, with interest from August 3d, 1880, and the costs; which was duly docketed, and on which execution issued, and which is yet unpaid. There were other unsatisfied judgments against said C. W. Whitehurst which were liens in favor of Baker & Clark and of Kennard & Oudesley.

Benjamin T. Bockover (appellee), at the death of Mrs. Minia D. Whitehurst, in March, 1881, held a note dated January 11th, 1881, drawn by C. D. Whitehurst and endorsed by his wife, the said Minia D. Whitehurst, for $2,524 76, payable

to said Bockover two years after date, with interest from date, which endorsement by the said Minia D. Whitehurst was intended by her to bind her separate estate for payment of the said note. This note matured January 11th, 1883; and at March rules, 1883, the said Bockover (for himself and creditors of Mrs. Minia D. Whitehurst) filed his bill in this cause, setting up the indebtedness of Mrs. Minia D. Whitehurst to him, the said Bockover, in the said sum of $2,524 76, by reason of her said endorsement, and charging that the estate of which she died seized and possessed is liable, in the hands of the said C. W. Whitehurst, the executor of her will, *first*, to the payment of her debt, and praying for an account and decree directing the said executor of her will to pay this debt of Bockover and any other debts of the testatrix before making any other application of the assets of her statutory separate estate, either to his own use as devisee or to payment of his own debts.

The appellant, Browne's administratrix, answered this bill, setting up her said judgment of December, 1880, against C. W. Whitehurst, and claiming that it is a lien on Whitehurst's estate by the *curtesy consummate*, and that, to the extent of his life estate by the curtesy, her said judgment has priority over the general lien of Bockover and the other creditors of Mrs. Minia D. Whitehurst, which is only on the *remainder*, and asking that this life estate in the surplus of the proceeds of sale of the lot in Norfolk city and the house and lot in Brambleton be applied to her said judgment and other judgments against said C. W. Whitehurst. On reference to a master commissioner, by decree for an account, the commissioner raised the question, whether, in respect of the curtesy of said C. W. Whitehurst, there is a lien on the statutory separate estate of Minia D. Whitehurst in favor of his judgment creditors?

The said corporation court of the city of Norfolk, by a decree of 7th December, 1883, decided that C. W. Whitehurst had an estate by the curtesy *consummate*, in the realty of which his wife died seized, and that this life estate is liable, *first*, to

the liens of *his* judgment creditors, and directed that, to the
extent of this life estate therein, the said surplus of proceeds
of sale of the Norfolk city lot and the said house and lot in
Brambleton should be applied to the payment of, first, the
judgment liens of Baker & Clark; second, of Browne's admin-
istratrix; and third, of Kennard & Oudesley.

On the 15th of May, 1884, Bockover filed his petition for a
rehearing, on the grounds that his claim for $2,524 76 and
interest, evidenced by the note aforesaid, endorsed by Mrs.
Minia D. Whitehurst, was a charge on the separate estate of
the said Minia D. Whitehurst; that the act of 4th of April,
1877, (the married woman's act) destroyed the estate of the
husband by the *curtesy* initiate in the wife's lands, and no
interest whatever in the wife's lands vested in him during
the coverture, according to the case of *Breeding* v. *Davis*, de-
cided by this court at Wytheville in July, 1883, and reported
in 77 Va., (2 Hansbrough) 639.

The court, on this rehearing, reversed its decree of 7th
December, 1883, so far as relates to this question of lien on
the curtesy, and, by its decree of the 7th of May, 1885, de-
cided that the entire estate of Mrs. Minia D. Whitehurst is
immediately liable for payment of her creditors, and that the
judgment creditors of her husband, C. W. Whitehurst, had
no lien on her realty prior to her creditors by reason of any estate
by curtesy consummate in her said husband. And, by further
decree of 17th July, 1885, the said court directs the payment to
Bockover and other creditors of Mrs. Minia D. Whitehurst of
their claims out of the said surplus of proceeds of sale of the Nor-
folk city lot and the proceeds of the Brambleton property,
which, in December, 1883, it had directed to be applied to the
judgment liens of appellants to the extent of the said estate
by curtesy. From these two decrees of May 7th, 1885, and
July 27th, 1885, Browne's administratrix obtained this appeal.

There is but one question submitted by this record for the de-
cision of this court. And that is, was there or not an estate

by the *curtesy consummate* in his wife's realty, vested in the said C. W. Whitehurst at his wife's death, which is subject to the liens of his judgment creditors obtained in his wife's lifetime and during coverture, prior to the general liens of her creditors on her realty to the extent of his life estate?

The estate by the curtesy *initiate*, before the act of 1876–7, was a 'marital right of the husband to the possibility of an estate by the curtesy *consummate*, to an estate for life, in the wife's realty; if there should be or had been issue, and if the husband should survive the wife. The act of 1876–7 makes no change in this *initiate* right, except to add a new contingency—that of *alienation* by the wife *in her lifetime;* but it does not destroy the right *initiate*, which was, before the act of 1876–7, a right to the chance of surviving the wife; and is now, under the act, subject to the double contingency of his surviving, and her not alienating in her lifetime. The express provision of the married woman's act is to the effect that nothing contained in this act shall be construed to deprive the husband of curtesy in the wife's real estate to which he was entitled by the laws then in force. (Acts 1876–7, chapter 329, section 2.) And, by the amending act it is provided, that nothing contained in this act shall be construed to deprive the husband of curtesy in the wife's real estate, nor the wife of dower in her husband's estate. (Acts 1877–8, p. 248.)

The initiate right of the husband, under the decision in *Breeding* v. *Davis*, could be or would be defeated if the realty of the wife were *aliened* during coverture, either by the joint deed of the wife and husband, or by sale and conveyance, under decree of a court of equity, at her suit, for the pupose of effecting such alienation, where her husband refused to unite with her in such alienation; but the husband retains under the statute his right of having vested in him a life estate in the realty of the wife, as tenant by the curtesy *consummate*, if neither of the two contingencies—the *old* one of his death, nor the *new* one of her alienation in her lifetime, should inter-

vene to defeat the consummate vesting of the life estate by the curtesy.

There had been no alienation in this case at bar, and no suit by the wife to effect alienation; and by operation of law, the moment Mrs. Whitehurst died, the husband, C. W. Whitehurst, acquired a vested estate for life in her realty as tenant by the curtesy consummate; which said life estate is subject to the judgment liens of the appellants. The appellee, Bockover, at the date of Mrs. Whitehurst's death, had no judgment or other specific lien; and, in fact, his debt was not due for nearly two years after her death. *Bockover*, in common with all her other creditors, had at her death a general lien on all her estate, real and personal, in the hands of her executor. But what was her estate at her death? It was the realty named, which she held as her separate estate, subject to the contingent right of her husband to a life estate given to him by operation of law; her estate was the *remainder in fee*, after the husband's life estate; and this remainder is all that the general lien of appellee, Bockover, and her other creditors could attach to. And the title of the husband to this life estate is, by law, paramount to the liens of the creditors of the wife; and the lien of the judgment of the appellant binds this life estate of the husband, C. W. Whitehurst, beyond all competition by the appellees.

The merger of the husband's life estate with the fee, by the devise in her will of all to the husband, could not destroy the right of appellants to resort to the husband's life estate for satisfaction of their judgment lien. She could devise only what she held; and she had held this realty as her separate estate, subject to the ultimate vesting of her husband's life estate by the curtesy consummate, if he should survive her, and she did not in her lifetime *alienate* it.

The corporation court of Norfolk city erred in reversing its own decree of December 7th, 1883; and in directing payment

to appellee, prior to, and to the exclusion of, the appellant's right to satisfaction of her judgment lien, out of the life estate.

The said decrees, of May 7th, 1885, and of July 17th, 1885, must be reversed, so far as they are complained of; and the case will be remanded, with instructions to the said corporation court, to decree the application of the surplus of proceeds of sale of the Norfolk city lot, and the proceeds of the Bramble-ton house and lot, to the extent of C. W. Whitehurst's life estate therein, and also the income accrued therefrom to this time, to the payment of the judgment liens of—first, Baker & Clark; second, of Browne's administratrix (appellant); third, of Kennard & Oudesley, and the costs.

The rest of the decrees, not complained of, will be affirmed.

Richardson, J., dissented.

Judgment reversed.