# Richmond

### Clarence Rudolph Pearson Newsome, Et Al. v. Frances J. Scott, Et Al.

May 4, 1959.

Record No. 4905.

Present, All the Justices.

The opinion states the case.

*Richard E. Railey*, for the appellants.

*J. Edward Moyler* (*Moyler & Moyler; Woodward & Ferguson,* on brief), for the appellees.

MILLER, J., delivered the opinion of the court.

The purpose of this litigation instituted by appellee, Frances J. Scott, and others, against Clarence Rudolph Pearson Newsome, William P. Newsome, and others, is to construe the will of Merritt Johnson, deceased, and determine the ownership of property devised and bequeathed under its fourth clause.

Merritt Johnson, 72 years old, died in 1918 possessed of personal property and real estate. In clause 1 of his will, executed on February 22, 1912, he made provision for his wife, and after bequeathing and devising a specific sum of money and a designated parcel of real estate by clauses 2 and 3, he disposed of the residue of his estate, real and personal, in clause 4 which follows:

"4—The remainder of my estate I give to Violet Merritt Johnson, but if she should die without heir, then I want it to go to the children of Wm. H. Johnson and Ruth Johnson but to no others except the children of William H. Johnson and Ruth Johnson."

Testator was survived by his wife, Sophronia, now deceased, and two children, Ruth Johnson (at times called Linnie Ruth Johnson), who married William H. Johnson on June 14, 1906, and Violet Merritt Johnson, who married William P. Newsome on June 19, 1929, as his heirs at law. Wher ɜstator's will was executed, the respective ages of his daughters } .h and Violet, were twenty-five and eight years, and when he di Ruth was thirty-one and Violet fifteen years old.

Ruth Johnson and her husband, William H. Johnson, are both deceased, but they had ten children, including Frances J. Scott, and all of them now survive except William H. Johnson, Jr. The record does not disclose how many of these ten children were born before the death of testator, but the probabilities are that some were born before and some after his death. William H. Johnson, Jr., who died in November, 1953, was survived by five children, but it is not stated whether he died testate or intestate.

No children were born to Violet and William P. Newsome, but on the 5th day of September, 1950, thirty-two years after the death of Merritt Johnson, they adopted a child who was then twenty years of age. Violet died intestate on June 7, 1955, survived by her husband, William P. Newsome, and their adopted son, Clarence Rudolph Pearson Newsome.

The dominant questions presented are: (a) upon the death of Violet, did her adopted son become entitled by inheritance from her to the fee in the property bequeathed and devised under the fourth clause of testator's will, or are the children of Ruth Johnson and her husband, William H. Johnson, now entitled to the fee in the property as devisees under that clause of the will, and (b) whether or not William P. Newsome is entitled to curtesy in the real estate.

The court decreed that "(1) under the fourth clause of the said will providing that 'the remainder of my estate I give to Violet Merritt Johnson, but if she should die without heir, then I want it to go to the children of Wm. H. Johnson and Ruth Johnson but to no others except the children of William H. Johnson and Ruth Johnson,' the words 'without heir' as used by the testator did not include a child by adoption; (2) Violet Merritt Johnson Newsome took a defeasible fee under the fourth clause of said will which was terminated by her death without issue or heir of her body; (3) upon the death of Violet Merritt Johnson Newsome, the children of William H. Johnson and Ruth Johnson took the gift over, a fee simple estate, as an executory devise, subject to the life estate of William P. Newsome by the curtesy; and (4) William P. Newsome is entitled to an estate by curtesy in the real estate passing under the said fourth clause of the will except such as has been sold under decree of court or conveyed by William P. Newsome and Violet Merritt Johnson Newsome to third parties."

Appellant, Clarence Rudolph Pearson Newsome, in asserting that he is now entitled to the property, invokes the broad and inclusive

language of § 63-357, Code 1950, and § 63-358, 1958 Cum. Supp., Code 1950, (Acts 1954, ch. 489, p. 583) in effect when Violet Merritt Johnson Newsome died. Section 63-357 declares that the adopted child shall "* * * be to all intents and purposes, the child of the person or persons so adopting him. * * *" Under § 63-358 it is provided that "for the purpose of descent and distribution a legally adopted child shall inherit, according to the statutes of descent and distribution from and through the parents by adoption * * * and shall not inherit from the natural parents * * *."

He insists that as he, the adopted child of Violet, was living when she died, she did not "die without heir" within the meaning and intent of the will and statute which he says must be read and construed together.

In *Dickenson* v. *Buck*, 169 Va. 39, 192 S. E. 748, decided in 1937, and relied upon by appellant, the then applicable adoption statute provided that the adopted child shall "be to all intents and purposes, the child and heir at law of the persons so adopting him or her * * * entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock * * *." There, upon construing a provision in the will of Thomas T. Dickenson, which devised certain land "to my son Henry P. Dickenson, for his life, and after his death to his legal heirs * * *," we held that a child adopted by Henry P. Dickenson after the death of testator, Thomas T. Dickenson, was Henry P. Dickenson's "legal heir" under the statute and "*was the person described in the will and intended by the testator as the remainderman.*" (Emphasis added.)

Henry P. Dickenson died without issue and left surviving his adopted son and a sister, and the significance of the use by testator of the words "legal heirs" to *identify* the remaindermen who were to take under the will is made evident by the opinion. In the course of the opinion it is said:

"We deem it important to emphasize the fact in this particular case that the right to inherit as heirs at law under the statutes of descents and distributions is not involved. * * *

\*         \*         \*         \*         \*         \*         \*

"* * *[T]he appellant was the sole heir at law or 'legal heir' of Henry P. Dickenson, the foster father and life tenant at the time of the latter's death. Being such, he necessarily was the remainder-

man intended by the testator to take the estate, if we give effect and meaning to the clear and unambiguous language of the testator, which, of course, we must do." (At page 44.)

In *McFadden* v. *McNorton*, 193 Va. 455, 69 S. E. 2d 445, (likewise cited by appellant), decided after the 1942 amendment of the adoption statute, which provided that the adopted child shall inherit "according to the statutes of descent and distribution, from and through" the parents by adoption, we held that the right of the child to inherit was determined by the law in effect at the time of the death of the person from whom the inheritance was claimed, and under the phrase "from and through" the adopted child inherited from the sister of his adopting parent.

Here, however, the primary question is not whether an adopted child inherits from collateral relatives of its adopting parents but whether or not by the language used testator intended that the phrase, "but if she should die without heir," include an adopted child. We must determine the testator's intent from the language employed in the light of existing circumstances. It is also to be kept in mind that the statute of descent and distribution is not a canon of presumptive intent. It cannot be employed for that purpose and thus have its terms substituted for testator's intent. Intent of the testator must be ascertained from his will unaided by the statute. Then, what is meant by the language, "but if she should die without heir, then I want it to go to the children of Wm. H. Johnson and Ruth Johnson, but to no others except the children of William H. Johnson and Ruth Johnson?"

Here testator recognized and provided for the contingency of Violet dying without "an heir" by the gift over to the children of Ruth and William H. Johnson, who were testator's grandchildren. Employment of the words "heir" or "heirs" in a devise may or may not include those who constitute "legal heirs" under the statute of descent and distribution. When these terms are used, the testator may not intend that they include heirs general or an adopted child. Here it is manifest, in fact conceded, that testator did not mean heirs general by use of the words "die without heir" for no one can die without an heir general whilst he has any collateral relative to succeed him. Likewise, the context of the will and use of the phrase "die without heir," with a limitation over upon the happening of the contingency to grandchildren of testator and "no others" by plain im-

plication show intent to employ the words "die without heir" in the sense of "heir of the body" or "issue."

"* * *[T]he intention of the conveyor may be that no statute dealing with the intestate succession of property is to be employed in the ascertainment of the described conveyees. Such is the effect when the word 'heirs' is construed to mean children or issue." 3 Restatement of the Law of Property § 305-o, at page 1682. See also § 305-r, at page 1685.

This meaning of the word heirs was adopted and applied in *Norris* v. *Johnston*, 17 Gratt. (58 Va.) 8, 9, where Judge Moncure, who delivered the opinion of the court, said:

"The court is of opinion that the clause in the will of William Norris in these words: 'Item—It is my will and desire that if any of my children die without heirs for their parts to be equally divided amongst all my children then living,' is a valid executory bequest, being to take effect in the lifetime of a person or persons in being at the time of the testator's death. The word 'heirs' in the clause means 'issue;' and the words, 'all my children *then* living,' mean all his children living at the time of the death of any of his other children without issue. * * *"

In *Gaskins and others* v. *Hunton*, 92 Va. 528, 23 S. E. 885, the pertinent clause of testator's will to be construed provided that "if either should die before the division or without an heir, the estate of such an one to be equally divided amongst all my living children above mentioned." In construing this devise, we said:

"He first provides that it shall be divided among his four living children, but, if any of them died before such division was made, or died without an heir (that is, without issue of his body), then, in that event, his share was to be equally divided among the surviving children." (At page 532.)

The term heir, when used in a will, is flexible and at times subject to different meanings dependent upon the over-all context of the will. It should be construed and interpreted so as to give effect to the intent of the testator as disclosed from a full and careful consideration of all of the provisions of the will.

Here, neither the language used nor the purpose of the testator indicates that he intended that the statute of descent and distribution be invoked to determine whom he meant to be the ultimate beneficiary or beneficiaries of his devise. It is evident from his language that he did not intend that the adoption of a child by Violet

at any time, much less thirty-two years after his death, operate to defeat the defeasibility of her estate, and thus exclude the children of Ruth and her husband as ultimate takers of the fee simple in event of defeasance.

We think it is made certain by the context of clause 4 that testator intended that the limitation over to the children of Ruth and William H. Johnson be effective in case of the death of his daughter Violet without issue or heir of her body.

█ Assuming, as the record seems to indicate, that when testator died in 1918, some, if not all, of the ten children of Ruth and William H. Johnson were in being, those then in being became seized of vested interests or estates in a contingent limitation over after a defeasible fee. 1 Minor, *Real Property* (2d ed. Ribble) §§ 719, 786; 19 Am. Jur., Estates, §§ 117, 124; 33 Am. Jur., Life Estates, Remainders, etc., §§ 77, 121, 125, 131, 132, 133. In case some of the ten children were born after testator's death, the interest or estate that had vested in those in being when testator died would and did open up and let in the after-born members of the class as each came into being. § 55-15, Code 1950; 1 Minor, *Real Property* (2d ed. Ribble), § 719; 33 Am. Jur., Life Estates, Remainders, etc., §§ 131, 133. The interests or estates so vested in each of these ten children as they came into being were and are assignable, devisable and inheritable. 1 Minor, *Real Property* (2d ed. Ribble), §§ 765 and 805.

█ Is William P. Newsome entitled to curtesy in the real estate in which his wife, Violet, was during her lifetime seized of the defeasible fee?

At common law, to entitle the husband to curtesy it was necessary that issue of the marriage be born alive. 1 Minor, *Real Property* (2d ed. Ribble), § 218, p. 279; 5 M. J., § 7, p. 468. However, the requirement that issue be born alive during coverture to entitle the husband to curtesy has been removed. Section 64-20, Code 1950, in effect at the time of Violet's death, provides that the surviving husband shall be entitled to curtesy in the real estate "whereof his wife, or any other to her use, was, at any time, during coverture, seized in fact or in law of an estate of inheritance, unless his right to such curtesy shall have been lawfully barred or relinquished."

Under the fourth clause of Merritt Johnson's will, his daughter, Violet, was devised a fee in the real estate subject to be defeased only upon her death without an heir of her body or issue, and she was

thus seized of an estate of inheritance. *Snidow* v. *Snidow*, 192 Va. 60, 63 S. E. 2d 620; 6 M. J., § 29, p. 386, and cases cited.

An exhaustive discussion of the subject is found in 98 Univ. of Pennsylvania Law Review 826, and at page 835, the English case of *Buckworth* v. *Thirkell* (1785), 99 Eng. Rep. 903, is cited wherein curtesy was allowed to the husband in the estate of his wife, which was determined by her dying under twenty-one without issue living at her death.

Under the express provisions of § 64-20 and on the principle announced in these authorities, it is quite evident that William P. Newsome is entitled to curtesy in the real estate unless his right thereto shall have been lawfully barred or relinquished.

■ During the lifetime of Violet she conveyed to her husband by deed in which he did not join as a grantor a parcel of the real property in which she had been devised the defeasible fee. It is contended by appellees that upon acquisition of the defeasible fee by William P. Newsome, his curtesy interest in that parcel of real estate was merged into the defeasible fee and thus extinguished and obliterated. This contention was overruled by the trial court, and under the decree appealed from Newsome is entitled to curtesy interest in this parcel of land. That holding is now challenged by appellees.

In *Garland* v. *Pamplin, et als.*, 32 Gratt. (73 Va.) 305, decided October 13, 1879, the doctrine of merger is stated thus:

"Merger is described as the annihilation of one estate in another. It takes place usually when a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, whereby the less is immediately merged—that is, sunk or drowned in the greater. To this result, it is necessary that the two estates should be in one and the same person, at one and the same time, in one and the same right. 2 Bouv. Institutes, 375, No. 1989; 2 Minor's Inst. (2d ed. 368, *et seq.*" (At p. 315.)

As merger contemplates and presupposes the union at the same time of two estates, a greater and a lesser, in one and the same person, it is pertinent that we ascertain the character of the husband's curtesy interest which is claimed to have been merged into the defeasible fee conveyed to him by his wife.

A discussion of the character of curtesy initiate and consummate at common law and the effect of the Married Woman's Act (Acts 1876-77, ch. 329, p. 333, as amended by Acts 1877, ch. 265, p. 247) upon curtesy is found in *Breeding* v. *Davis and als.*, 77 Va. 639. In

that case, decided in 1883, it is said at page 646, that at common law "the husband acquired by the marriage an estate in the wife's land, more or less ample according to the birth or failure of issue. * * * By the birth of issue, he became tenant by the curtesy initiate, and as such took an estate in the lands of his wife *in his own right.* * * * '[H]is estate is not consummate until the death of the wife.' " 1 Minor, *Real Property*, (2d ed. Ribble), § 778, p. 1011.

However, by enactment of the Married Woman's Property Act, *supra,* the husband's tenancy by the curtesy initiate was materially modified and diluted. The effect of that legislation upon curtesy is stated in *Breeding* v. *Davis, supra,* and its character after the enactment is defined as follows:

"The consequence of giving the wife, as the statute does, the control of her property free from the interference of her husband, is to postpone his right of curtesy until her death, and hence to render it contingent on his surviving her. * * *

* * * * * * *

"* * * The husband has now only a modified tenancy by the curtesy, dependent upon a contingency, and *no estate* vests in the husband during the life of the wife. This is rather a shadowy estate. It is an interest which may possibly ripen into something tangible in the uncertain future.

"Previous to the act, it could be sold on execution against the husband. Now the wife has the sole control of her real estate during her life, and the husband has no interest until her death. This estate at best is now a bare possibility, dependent on his surviving his wife. *Martin* v. *Robson,* 65 Ill. 132; *Hill* v. *Chambers,* 30 Mich. 427.

"* * * The married woman's act, as it prevented his acquiring any interest in his wife's estate during her life, destroyed the estate of tenancy by the curtesy initiate.

"The act, however, does not defeat the husband's estate by the curtesy at her death; *provided the estate has not been aliened before her death.* * * *

* * * * * * *

"* * * The intention of the legislature is plainly to abrogate the

common law rule to a great degree, that the husband and wife were one person, and give her the right to manage her separate property and contract with reference to it. Curtesy, as we have said, is preserved by the statute, but his wife is living; so Crum has no title by the curtesy. Whatever interest he has in his wife's lands is dependent upon a contingency—whether he shall survive his wife; and no estate can be said to vest in him during the life of the wife." (At pages 649, 650, 651.) *Browne* v. *Bockover*, 84 Va. 424, 4 S. E. 745.

In the instant case it is quite clear that there was no merger of William P. Newsome's curtesy with the defeasible fee conveyed to him by his wife. Until the death of his wife he acquired no *estate* by the curtesy in her real estate. It was not until her death, when the defeasible fee was obliterated, that he acquired an *estate* by the curtesy. The two estates never met or united in him at one and the same time.

We find no error in the decree appealed from, and it is accordingly

*Affirmed.*

SPRATLEY and BUCHANAN, JJ., dissenting in part.

BUCHANAN, J., dissenting in part:

In Clause 4 the testator gave the remainder of his estate to his daughter Violet Merritt Johnson, "but if she should die without heir," then to the children of William H. Johnson and Ruth Johnson.

The devise to Violet Merritt Johnson, as the court says in the majority opinion, was a defeasible fee; *i.e.*, a fee subject to be defeated by the happening of a condition subsequent. The condition subsequent expressed in the will was her dying "without heir." If she died leaving an heir her estate in fee was not defeated. The controlling question then is, did she die "without heir"?

The statutes alone determine who are the heirs of a person dying. *McFadden* v. *McNorton*, 193 Va. 455, 461, 69 S. E. 2d 445, 449. One of these statutes is § 63-357, which declares that an adopted child is "to all intents and purposes" the child of the adopter, "entitled to all the rights and privileges, * * of a child of such person or persons born in lawful wedlock."

Section 63-358 is another of these statutes. It declares that for the purpose of descent and distribution a legally adopted child shall inherit "from and through" the adopting parent, but not from his

natural parents, and if he dies intestate without issue surviving, his property goes to those who would have taken had he been the natural child of the adopting parent.

"* * Considered in connection with the broad and comprehensive language employed, they [the adoption statutes] emphasize the specific intention to put an adopted child on the same footing as the natural child, thus giving him the right to take by representation * * what the natural child would have taken, had there been one, upon the death of his father intestate." *McFadden* v. *McNorton, supra,* 193 Va. at 462, 69 S. E. 2d at 450.

The primary question here, as I see it, is not as the opinion states, whether the testator intended by the language "if she should die without heir" to include an adopted child. The primary question is what kind of estate the testator gave this daughter by these words. Unquestionably he gave her an estate in fee which would be terminated, however, if she died without an heir. She did not die without an heir because the adopted son was her heir. He was, says the statute, "to all intents and purposes" her child, entitled to inherit from her exactly as her natural child would do. The testator did not say that the condition which would defeat his daughter's estate was that she die without an heir of her body. He said, "if she should die without heir." The court, not the testator, now adds "of her body." If he had said that, he would have made a different condition, one that would have been effective to transmit the estate as the court now says it shall go. But we should construe the will as written. "The true inquiry is not what the testator meant to express, but what the words he has used do express." 20 Mich. Jur., Wills, § 81, p. 252. We are not entitled to add words to those used by the testator, however preferable we may consider the result.

I would reverse the decree on this feature of the case, and affirm it on the question of curtesy.

MR. JUSTICE SPRATLEY joins in this dissent.