# Staunton

## WILLIAM THOMAS DICKENSON, AN INFANT, ETC. V. MARY J. L. BUCK AND D. S. BUCK.

September 23, 1937.

Present, All the Justices.

The opinion states the case.

*M. M. Long* and *W. W. Bird,* for the appellant.

*I. A. Beauchamp* and *Arthur T. Griffith,* for the appellees.

GREGORY, J., delivered the opinion of the court.

On December 20, 1910, Thomas T. Dickenson, a farmer residing in Russell county, Virginia, owned in fee certain real estate situate in that county, and on that date he made his last will, devising certain portions thereof to his son, Henry P. Dickenson, during his life and at his death to his "legal heirs." Other portions were devised to his daughter.

In 1913, the testator died leaving two children, namely, a son, Henry P. Dickenson, and a daughter, Mary Dickenson, who is now Mary J. L. Buck, one of the defendants. The will was duly probated.

In 1923, Henry P. Dickenson, who was then married, and had no children, made application to adopt John William Houston, a child in the custody of the Children's Home

Society of Virginia. His wife joined in the application. The proceedings were conducted in the Circuit Court of Russell county. On the 4th of December, 1923, a final order of adoption was entered in which John William Houston was adjudged to be the child, to all intents and purposes, of Henry P. Dickenson, and his name was changed to William Thomas Dickenson. He is the appellant in this cause.

The marital rights of Henry P. Dickenson, the foster father, and his wife were terminated by a divorce.

In March, 1935, Henry P. Dickenson died intestate and left surviving him his adopted son, William Thomas Dickenson, and a sister, Mary Dickenson, now Mary J. L. Buck.

Prior to his death Henry P. Dickenson had given a deed of trust on his life interest in the tracts in question and it had been foreclosed and bought in by his sister, Mary J. L. Buck. She is now in possession and has been since her purchase.

The appellant, being an infant, proceeded by his next friend to have a declaratory decree establishing his title to the two tracts. The facts above narrated were alleged in his petition. He claimed to be the sole heir and distributee of Henry P. Dickenson and as such entitled to the lands.

A demurrer was interposed by Mrs. Buck and her husband, D. S. Buck, the other defendant, to the petition, in which they attacked the legality of the adoption proceedings, but this point is not now insisted upon. The main point raised was that the appellant was not within the contemplation of the testator, Thomas P. Dickenson, when the will was made; that the adoption did not take place until ten years after the testator's death and that the testator never intended his estate to pass from his blood to a stranger. Contention is also made that an adopted child, under the adoption statute, may inherit from the foster father but he may not inherit through him from others. The same points were made in the answer.

D. S. Buck has no interest in the suit other than that which might exist by virtue of his marriage to the testator's daughter, Mary Dickenson, now Mary J. L. Buck.

The court by its decree held that Mary J. L. Buck was the sole "heir at law of Henry P. Dickenson, deceased, as contemplated under the terms and provisions of the will of Thomas T. Dickenson * * * and that the complainant, William Thomas Dickenson, a child adopted by Henry P. Dickenson subsequent to the death of Thomas T. Dickenson, does not take through the terms and provisions of the will of the said Thomas T. Dickenson, * * * ." The correctness of that decree is challenged by this appeal.

The two items of the will of Thomas T. Dickenson here involved are numbers two and eight.

By item two the testator makes the devise in this language: "All of my farm known as the 'Zion Place,' and composing 300 acres, more or less, I bequeath to my son Henry P. Dickenson, for his life, and after his death to his legal heirs, except that, if he should marry, and be survived by a widow, then one-third of the said 'Zion Place' shall be set off to her for her life, the same as dower portion, and to revert to the legal heirs of my son Henry at her death."

By item eight the testator makes the devise in this language: "To my beloved wife, Lillian, I bequeath, for her life, all the remainder of my lands, not otherwise disposed of herein, whereof I may die seized, the same including the residue of my 'Grandview' farm and dwelling house, after her death to our daughter Mary forever, except the tract known as the 'Aston and Burchard land,' lying on the North side of Red Oak ridge, and containing 28½ acres, more or less, which shall go to my son Henry for life, and after his death to his legal heirs."

No question is raised as to the dower interest mentioned in item two and it will not be necessary to again refer to it.

The testator left to his daughter, the appellee, other lands and personal property and in the eleventh item of his will he expressed himself as having made the best and most equitable disposition of his property. He also made provision for his wife.

It is notable that the testator uses the words "legal heirs" in both items of the will to identify the remainder-

men who are to take the property after the death of his son Henry P. Dickenson. He does not direct that the property shall go to his blood descendants by the use of such words as "heirs of his body" or "heirs of the body" of his son Henry. He simply directs that it shall go to whomever the law fixes and establishes as the legal heirs of Henry (which could only mean the "heirs" of Henry) at the time of the latter's death.

█ When we ascertain who were the "legal heirs" of Henry P. Dickenson our problem will be solved. Of course, his legal heirs must be determined as of the time of his death.

The appellant asserts that he is the sole legal heir of Henry P. Dickenson, while the appellee asserts that she answers that description.

If the effect of the adoption under our statute constituted the appellant the "legal heir" of Henry P. Dickenson within the contemplation and intention of the testator then he should prevail.

The pertinent part of our adoption statute (Code, section 5333, as amended by Laws 1922, ch. 484) is as follows: "The natural parents shall, by such final order of adoption, be divested of all legal rights and obligations in respect to the child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them; such child shall, from and after the entry of the interlocutory order herein provided for, be, to all intents and purposes, the child and heir at law of the person so adopting him or her, unless and until such order is subsequently revoked, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock; * * * ."

It is observed that the language of the statute is very broad and inclusive. A child by adoption for "all intents and purposes" is the child and heir at law of the adopting parent and entitled to "all the rights and privileges" of a child of such parent born in lawful wedlock.

■ We deem it important to emphasize the fact in this particular case that the right to inherit as heirs at law under the statutes of descents and distributions is not involved. This case is one involving specifically the right of the appellant as an adopted son of the life tenant to take a devise in remainder under the will of the testator as a legal heir of the life tenant. "One who takes under a will does not inherit" strictly speaking. To inherit is to take as an heir at law under the statutes of descents and distributions and not under a will. Here the adopted son takes the devise not as heir at law of the testator but as remainderman under the will. He is not an heir of the life tenant by birth but takes solely by virtue of the statute (5333) as the statutory heir of the life tenant and as the person described in the will and intended by the testator as the remainderman.

■ The broad language of the statute has made the appellant the heir of the adopting parent just as though he were a child by birth. The adopted child and the child by birth stand alike and equally as the heirs of the foster parent. Therefore, the appellant was the sole heir at law or "legal heir" of Henry P. Dickenson, the foster father and life tenant at the time of the latter's death. Being such, he necessarily was the remainderman intended by the testator to take the estate, if we give effect and meaning to the clear and unambiguous language of the testator, which, of course, we must do.

■ The intention of the testator must control. His language expressed in the will is so clear and plain that there can be no doubt as to what he intended. This being a case of testacy we must construe the will and the adoption statute together. If it were a case of intestacy then the adoption statute and the statute of descents and distributions would necessarily have to be read together. When we consider the devise and the adoption statute together, it is obvious that the devise in remainder is to the legal heirs of Henry P. Dickenson and the adoption statute creates the legal heir of the life tenant and places the appellant in that position.

In *Wallace* v. *Minor*, 86 Va. 550, 10 S. E. 423, 424, a devise "for the use, benefit and behoof of my daughter * * * during her natural life, and for the use of the heirs of my said daughter at the death of my said daughter" was construed to mean that the heirs of the daughter at her death took the estate as contingent remaindermen and that the word "heir" was used in its technical sense and did not denote succession but described a devisee.

Just so in the case at bar. The words "legal heirs" of Henry Dickenson used in their technical sense do not denote succession but they describe the person or persons who will take the contingent remainder after the death of the life tenant.

Many cases have been referred to by counsel. We cannot undertake to discuss all of them. Some are so different in their facts that they have no application. Others consider adoption statutes entirely different from our statute. Still others consider the effect of adoption in relation to intestacy and the inheritance laws or statutes of descents. Few of them consider a case similar to the one at bar.

In *Hockaday* v. *Lynn*, 200 Mo. 456, 98 S. W. 585, 8 L. R. A. (N. S.) 117, 118 Am. St. Rep. 672, 9 Ann. Cas. 775, the Missouri court construed the adoption statute and its effect upon intestacy but refused to allow the adopted child to inherit under the statute of descents from the brother of her deceased foster father the share the latter would have taken had he survived his brother. The adopted child was not permitted to inherit *through* the foster parent. That is not the case before us.

In *Mooney* v. *Tolles*, 111 Conn. 1, 149 A. 515, 70 A. L. R. 608, the question was whether an adopted child was included in a gift to "children" of the adopting parent.

In *Brooks Bank & Trust Co.* v. *Rorabacher*, 118 Conn. 202, 171 A. 655, 656, the amendment considered was entirely different from the Virginia statute. There, in speaking of the effect of the adoption, the language of the statute was, "shall bear the same relation to his adopting parents and their kindred in respect to the inheritance of property

* * * as he would if he were the natural child of such parents."

*In re Darling's Estate,* 173 Cal. 221, 159 P. 606, is another case involving the question of inheritance. No question of a devise was considered, but the California court construed "issue" to include an adopted child.

In Ohio we find an adoption statute quite similar to the Virginia statute. In construing its statute in relation to the will of a testator, the Ohio court in *Smith et al.* v. *Hunter et al.,* 86 Ohio St. 106, 99 N. E. 91, held that the testator must be presumed to have meant what he said when he provided that the remainder over should go to the "heirs at law" of the life tenant and that an adopted child of the life tenant was the latter's heir at law although there was no adoption statute when the will was executed. It was argued in that case that the testator never intended the estate to pass from his blood to a stranger, such as an adopted child, because, as already mentioned, in Ohio there was no adoption statute when the will was executed; that the scheme of the will showed the testator's great solicitude for those of his own blood, and that if the testator had anticipated the subsequent relation of the parties he would have used different language to designate the persons who were to enjoy in remainder his estate. The court, however, answered those contentions and said that if the court should limit the succession to the daughter's heirs at law, who should be of her blood it would constitute an amendment to the will rather than a construction of it. It was sufficient that the adopted child of the life beneficiary was her heir at law and as such, the remainderman designated by the testator in the will. The case, in its facts, is very much like the one at bar.

Since the *Smith Case,* the Ohio court has construed its adoption statute in relation to intestacy and its statutes of descents, and in *Kroff* v. *Amrhein,* 94 Ohio St. 282, 114 N. E. 267, has recognized the right of an adopted child to inherit from his foster father. Again in *Albright* v. *Albright,* 116 Ohio St. 668, 157 N. E. 760, 764, in construing a will the court held that a devise to a life tenant and remainder to

the "legal representatives of the Albright family" did not include as such representatives an adopted child. This was so construed, by reason of the context of the will and the emphasis placed by the testator on certain words, such as "his children," "children" and the like in the will; that the testator meant to exclude persons not of the blood of his own family and limit the gift to natural children.

Still later in *Pickering* v. *Koesling*, 30 Ohio App. 201, 164 N. E. 537, the Ohio court held that foster children could inherit from foster parents but not through them. This was a case of intestacy and involved the construction of the statute of descents and the adoption statute.

We do not discover any inconsistency in the Ohio cases. The court has undertaken to determine each case upon its own peculiar facts, construing the adoption statute in cases of intestacy with the statute of descents and in case of testacy with the particular language in the will.

In *Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127, 78 N. E. 697, 698, 116 Am. St. Rep. 536, a deed of trust conveyed land to a trustee for a life beneficiary "and after her decease to her heirs at law." The court held that the remaindermen were to be determined after the death of the life tenant and that the latter's heirs at law included an adopted child.

The New Jersey court, in construing its adoption statute, which is substantially the same as ours, in *Haver* v. *Herder*, 96 N. J. Eq. 554, 126 A. 661, held that a devise to a life beneficiary with remainder to his "legal heirs," included an adopted son of the life tenant.

. In *Ultz* v. *Upham*, 177 Mich. 351, 143 N. W. 66, it was held that a grant in a deed to a life beneficiary with remainder to "legal heirs," that an adopted son of the life tenant was her legal heir. The Michigan adoption statute is also substantially similar to ours.

In 1 Am. Jur., Adoption of Children, section 64, at page 666, it is said that, "The language of a gift over after the termination of a life estate may be sufficiently broad to include adopted children of the life tenant. This has been held to be the case where the devise over is to such person

or persons, as would by the intestate laws of the State, be entitled to the same, or where a conveyance of real property in trust is for the use of a designated beneficiary during his natural life, and at his decease for the use of his heirs at law, and in some cases, it has been held to be true as to a subsequently adopted child. * * * A deed conveying a remainder in fee to the 'heirs generally' of a life tenant, if he should die leaving no child, gives such remainder to an adopted child, under a statute which provides that such child shall be deemed, for the purpose of inheritance, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, even though such statute was passed after the deed was executed. * * * "

The weight of authority seems to be that an adopted child inherits from his foster parents but not through them. The foster parent takes the adopted child as one of his prospective next of kin but the foster parent cannot place the adopted child for inheritance purposes upon his relations. But in some jurisdictions an adopted child is allowed to inherit through the adopting parent from such parent's collateral relations. 2 C. J. S., Adoption of Children, pages 453 and 454.

As illustrative of the right of the adopted child to inherit through the foster parent is the case of *McCune* v. *Oldham,* 213 Iowa 1221, 240 N. W. 678, where the court held that the adopted child was entitled to the share in the estate that the foster parent would have received from his sister, had he survived her.

To the same effect see *Denton* v. *Miller,* 110 Kan. 292, 203 P. 693; *In re Waddell's Estate,* 131 Wash. 566, 230 P. 822; *In re Masterson's Estate,* 108 Wash. 307, 183 P. 93; *In re Cadwell's Estate,* 26 Wyo. 412, 186 P. 499.

However, those cases were decided upon statutes differing from ours. In the case at bar we confine our decision to the construction of the will and the precise devise to the testator's son for life and at his death to the son's legal heirs, rather than a consideration of intestacy, inheritance

and statutes of descents which were involved in the cases last above cited.

In the case of *Munday* v. *Munday's Ex'rs,* 164 Va. 145, 178 S. E. 917, 918, 98 A. L. R. 187, we held that an adopted child was not "surviving issue of the marriage which was dissolved by the death of the intestate or of a former marriage * * * ," as required by Code 1919, section 5273, prior to the amendment of 1926, ch. 329, page 596. That case has no bearing upon the one at bar. The facts as well as the issue presented were different. What was there said in regard to the instances in which an adopted child does not exercise the same rights and privileges of a natural child in respect to inheritance and descents and distribution of property was not necessary to the determination of the specific question there before the court. We do not now attempt to pass upon the right of the adopted child to inherit by statutes of descents and distributions from one not his foster parent. The cases cited by counsel passing upon that question adversely to the adopted child are not pertinent here.

The testator is presumed to have known of the adoption statute when he executed his will for it was then in existence. We think the testator was more interested in providing for his son, Henry, during his life than he was in who should constitute the line of succession after Henry's death. He meant what he said when he left the property in remainder to the "legal heirs" of Henry. He was willing for the law to determine them after the death of Henry. He was charged with knowledge of the fact that if Henry adopted a child, such child would be a "legal heir" of Henry. He never intended to limit the succession to his blood nor to exclude an adopted child. If he had, he would have used appropriate language for that purpose.

We are of opinion that the decree of the trial court is erroneous and should be reversed; that the appellant is the sole legal heir of Henry P. Dickenson and as such is entitled to the lands in controversy.

*Reversed and final decree.*