# Richmond

NARCIE B. FLETCHER, ET ALS. V. R. GUY FLANARY, ADMIN-
ISTRATOR OF THE ESTATE OF GEORGE M. BROWN,
DECEASED, ET ALS.

June 10, 1946.

Record No. 3049.

Present, All the Justices.

The opinion states the case.

*T. C. Bowen, T. C. Bowen, Jr.,* and *John R. Boggess,* for the appellants.

*James W. Harman,* for the appellees.

Holt, J., delivered the opinion of the court.

We are called to pass upon the rights of an adopted son. On May 15, 1908, P. J. Brown executed a deed, the pertinent parts of which read as follows:

"This Deed made this the 15th day of May, in the year of 1908, by and between P. J. Brown (Widowed) party of

the first part, and Geo. M. Brown and his children, party of second part, Witnesseth: That for and in consideration of the natural affection that the said P. J. Brown has for his son, the said Geo. M. Brown, and in further consideration of the sum of One Dollar, in hand paid, the receipt of which is hereby acknowledged, the said P. J. Brown doth hereby grant and convey with covenants with general warranty of title unto the said Geo. M. Brown, during his natural life, and at his death to his children, if any, and if the said Geo. M. Brown should die without children then to his next of kin, on his father's side, all of the following three *tract* of land, (reserving however, from this conveyance the life time control of the lands herein conveyed). Possession of the same is to remain in the said P. J. Brown during life."

Then follows a description of the land conveyed, which in turn is followed by this habendum clause: "To have and to hold the above described tracts *of* parcels of land and the appurtenances thereto belonging, unto the said Geo. M. Brown during his natural life, and at his death to his children, if any, and in case he should die without issue, then to his next of kin on his father's side. Witness the signatures and seal of the said P. J. Brown. P. J. BROWN (SEAL)."

A portion of the land conveyed was afterwards condemned under the right of eminent domain. The proceeds of this condemnation is now under control of the court. P. J. Brown, the grantor, died intestate in January, 1910, leaving to survive him this son Geo. M. Brown and other children. On February 23, 1923, Geo. M. Brown and his wife adopted an infant, whose name was Harley Eldridge Long, and whose name was then changed to Harley Eldridge Brown. Geo. M. Brown died intestate on March 9, 1943, leaving to survive him no child born in wedlock, but did leave to survive him this adopted child.

The right to adopt children was unknown to the common law and is probably inherited from the civil law of Rome.

Since it is not in derogation of the common law, the strict construction of statutes which hinge upon that system are not to be applied. With us the entire field of adoption is covered by statute.

Since these statutes confer a beneficial interest they are to be liberally construed, particularly in a contest between the adopted son and the estate of his intestate foster parents, to a less extent when the contest is between the adopted son and the estate of some remote ancestor by adoption.

In *Dickenson v. Buck,* 169 Va. 39, 192 S. E. 748, it is said: "The broad language of the statute has made the appellant the heir of the adopting parent just as though he were a child by birth. The adopted child and the child by birth stand alike and equally as the heirs of the foster parent."

P. J. Brown died intestate and Geo. M. Brown died intestate. This is a contest between the children of P. J. Brown, or their representatives, and Harley Eldridge Brown, the adopted son of Geo. M. Brown. Geo. M. Brown, the life tenant, took over and held this property, or that part of it not condemned, until his death. The proceeds of that condemned, as we have seen, is under the control of the court.

In 1892, sixteen years prior to the execution of said deed, the General Assembly, by Act of 1891-2, page 262, first dealt with the adoption of children, in which it is provided that the court:

"Shall make an order setting forth the facts and declaring that from that date, such child, to all legal intents and purposes, is the child of the petitioner, and that its name is thereby changed."

It was further provided:

"The natural parents shall, by such order, be divested of all legal rights and obligations in respect to the child, and the child be free from all legal obligations of obedience and maintenance in respect to them; such child shall be, to all

intents and purposes, the child and heir at law of the person so adopting him or her, entitled to all the rights and privileges, and subject to all of the obligations of a child of such person begotten in lawful wedlock; but on the decease of such person, and the subsequent decease of such adopted child, without issue, the property of such adopting parent still undisposed of, shall descend to his or her next of kin, and not to the next of kin of such adopted child."

This statute was amended from time to time, Acts of 1893-4, page 75; Acts of 1897-8, page 38; Acts of 1910, page 466; Acts of 1920, page 514; Acts of 1922, page 839; Acts of 1936, page 542; and finally was amended by a comprehensive act dealing with adoption, which repeals all previous acts and which declares in part:

"For the purpose of descent and distribution, a legally adopted child shall inherit, according to the statutes of descent and distribution from and through both the natural parents and the parents by adoption from the time of entry of an interlocutory order. If an adopted child shall die intestate, without issue surviving him, his property shall pass, according to the statutes of descent and distribution, to those persons who would have taken had the descendant been the natural child of the adopting parents; provided, however, that any property, real or personal, derived by deed, or by gift, or by will, or by inheritance, from the natural parents, or from either of them or their kindred, and capable of identification as such, shall pass, according to the statutes of descent and distribution, as if he had not been adopted." Acts 1942, chapter 205.

This amendment appears in Michie's Code, 1942, as part of Section 5333h. The legislature may from time to time change the course of descents and distributions. It may give to adopted children the right to participate in the intestate estates of their foster parents, and it may take this right away, but it cannot change a right which an ancestor by adoption can fix by contract. This P. J. Brown did, and when Geo. M. Brown, the life tenant, took over he acquiesced in the conditions imposed.

■■ Geo. M. Brown died intestate and this adopted son has received from his estate exactly what he would have received had he been born in wedlock—$40,000. That which is now in litigation is not a portion of this foster father's estate. Adopted children take from their foster parents, who die intestate, what children born in wedlock would take, but they take nothing as heirs or distributees from remote ancestors. This adopted child takes nothing as an heir or distributee of P. J. Brown. Such rights as he has rest in the deed from P. J. Brown of date May 15, 1908.

■ In the construction of deeds where there is irreconcilable conflict between the granting clause and the habendum clause, the granting clause controls, but the conflict must be irreconcilable, and so we look to the four corners of the deed itself and to the circumstances under which it was written and why.

In the construction of words, that construction given by Alice's friend, Humpty-Dumpty, is sometimes adopted, and it has been followed by distinguished exponents. He said:

"When I use a word it means just what I choose it to mean, neither more nor less".

There is another school now somewhat outmoded, which looks to their origin and to their historical development.

In the deed in judgment, grant is given to "Geo. M. Brown and his children", and later, "at his death to his children, if any, and if the said Geo. M. Brown should die without children, then to his next of kin, on his father's side".

■■ After having given, as we have seen in the granting clause of this deed, a life estate to his son George, he added this habendum clause, "at his death to his children, if any, and in case he should die without issue", then to his next of kin on his father's side. Since the grant was already to the children there was no occasion to use the word "issue", if it were but a synonym for child. Every word in a deed is supposed to mean something. It was inserted here to make assurance doubly sure and to make his purpose in the granting part of

his deed clear. That the word "issue" means lineal descendant finds support in all the dictionaries. In genealogy it connotes a common blood stream.

The construction of the word "issue" was before us in *Munday* v. *Munday*, 164 Va. 145, 178 S. E. 917, 98 A. L. R. 187. Justice Gregory, in a well considered opinion, at its end, reached this conclusion:

"Our conclusion is that under our statute 'issue' means natural descendants of a common ancestor. We, therefore, reverse the decree of the trial court and remand the cause for further proceedings not inconsistent with the views herein expressed."

And to that conclusion we adhere. It is true that the annotator of this opinion in A. L. R. said that it is against the weight of authority. Conceded, unnumbered cases have been cited which support both the plaintiff and defendant. In many instances they turn upon the statute. One must be steeped in legal lore to believe that the grantor, P. J. Brown, in using the word "issue" had in mind the possibility that his son, George M. Brown would fifteen years later adopt this infant, Harley Eldridge Long. When George M. Brown did adopt him he deliberately assumed the obligations of a father, and in this assumption owed him much. P. J. Brown owed him nothing, and never undertook to become his grandfather.

When he said that in the event of the death of Geo. M. Brown without issue, this estate should go to the next of kin on his father's side, he again tells us that the clan instinct was strong within him. He did not want this land to go out of the Brown family if it could be avoided, and by the Brown family he had the blood stream in mind.

Not only is the conclusion reached in *Munday* v. *Munday*, *supra*, a sound one, but it accords with reason. It would scarcely occur to the wayfaring man that "issue" meant an adopted son. In the instant case the definition adopted is strengthened by its context, and is fortified by the circumstances in which it was used.

*Reversed and remanded.*