# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## A. Sampson McFadden, In His Own Right and As Administrator, Etc. v. Nelson Robert McNorton.

March 10, 1952.

Record No. 3878.

Present, All the Justices.

The opinion states the case.

*Sacks & Sacks,* for the appellant.

*Douglass & Diggs,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This appeal involves the right of Nelson Robert McNorton, a legally adopted child, to inherit, according to the statutes of descent and distribution, the real estate of a deceased sister of his adopting father.

Anna McNorton McFadden, wife of A. Sampson McFadden, died intestate in the city of Norfolk, Virginia, on July 1, 1948, leaving several parcels of real estate. She left no children, no descendants of any children, no parents, no sisters or brothers, no descendants of any sister or brother surviving her. Her husband was her only survivor.

Nelson Robert McNorton, when he was about 12 or 13 years old, was legally adopted by N. F. McNorton and Carrie R. McNorton, his wife, by a final order entered in the Circuit Court of the county of York, Virginia, on September 14, 1933. The adopting father, a brother of Anna McNorton McFadden, died in 1948, a few months prior to the death of his sister.

The adopted child, hereinafter referred to as appellee, instituted this proceeding against A. Sampson McFadden, in his own right and as administrator of the estate of Anna McNorton McFadden, deceased, asking the court to determine whether he or McFadden was the sole heir at law of the decedent.

The appellee claimed that he was the sole heir at law and entitled to all the real property of which Mrs. McFadden died seized and possessed, subject to her husband's right of curtesy therein, by virtue of sections 63-357 and 63-358 of the Code of Virginia, 1950, Acts 1942, page 258, hereinafter quoted, and the statute of descent and distribution, § 64-1, Code of Virginia, 1950.

A. Sampson McFadden, hereinafter referred to as appellant, denied that appellee "was a relative and/or an heir at law of

Anna McFadden.'' He claimed, first, that appellee's rights should be determined under the adoption statute in force at the time of his adoption in 1933, rather than by the statute in effect at the date of Mrs. McFadden's death in 1948; and, second, that, if the latter statute controlled, the appellee still could not prevail because he did not come within any class specified in our statute of descent and distribution, since he was not, in fact, a descendant of Mrs. McFadden or her brother.

There is no merit in the first contention of appellant. Although there is some authority to the contrary, we are in accord with the great weight of authority which holds that the right of an adopted child to inherit is to be determined by the law in force at the death of the person from whom the inheritance is claimed. *Mott* v. *National Bank of Commerce*, 190 Va. 1006, 1011, 59 S. E. (2d) 97; *Blodgett* v. *Stowell*, 189 Mass. 142, 75 N. E. 138; *Brooks Bank, etc., Co.* v. *Rorabacher*, 118 Conn. 202, 171 A. 655; *Sorenson* v. *Rasmussen*, 114 Minn. 324, 131 N. W. 325, 35 L. R. A. (N. S.) 216, 219; *Anderson* v. *French*, 77 N. H. 509, 93 A. 1042, L. R. A. 1916A, 660, 664; 2 C. J. S., Adoption of Children, § 63-b, page 453; 16 Am. Jur., Descent and Distribution, § 12, page 77.

The identical question raised by the second contention of appellant has not heretofore been presented to this court. In *Mott* v. *National Bank of Commerce, supra*, at page 1012, it was left open, because the Act of 1942, hereinafter mentioned, was not there involved; but we took occasion to say that a statement in *Fletcher* v. *Flanary*, 185 Va. 409, 38 S. E. (2d) 433, 166 A. L. R. 145, that adopted children ''take nothing as heirs or distributees from remote ancestors,'' was not necessary to a decision in that case. The answer to the question now before us is to be found in our statute of descent and distribution as supplemented by the adoption laws in force at the time of the death of Mrs. McFadden.

So far as is pertinent to this case, our statute of descent and distribution, Code of Virginia, 1950, § 64-1; Code of 1919, § 5264, provides that ''When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass * * *,'' in the following course:

''First: To his children and their descendants.

''Second: If there be no child nor descendants of any child, then to his or her father and mother, or the survivor.

"Third: If there be neither father nor mother, then to his or her brothers and sisters, and their descendants.

"Fourth: If there be none such, then the whole shall go to the surviving consort of the intestate."

Manifestly, the appellee did not come within the classification of either of the first two sections. If he is entitled to inherit the estate of his adopting father's deceased sister, he must have a status within the classification of the third section by virtue of the adoption statute.

In Virginia, the whole field of adoption is covered by legislative action, beginning with "An Act to legalize the adoption of minor children by adult persons," chapter 170, Acts 1891-1892, page 262. In the interim, between 1892 and 1942, the legislature made certain material changes in the procedure looking to adoption; but failed to make any change in the status conferred upon the adopted child. The original Act was amended by Acts 1893-94, page 75, Acts 1897-98, page 38; Acts 1910, page 466, carried in the Code of 1919, as section 5333; Acts 1920, page 514; Acts 1922, page 839; Acts 1936, page 542, and also carried in the Code of 1936, Michie, as section 5333.

Section 5333, Code of 1936, Michie, reads, in part, as follows:

"The natural parents shall, by such final order of adoption, be divested of all legal rights and obligations in respect to the child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them; such child shall from and after the entry of the interlocutory order herein provided for, be, to all intents and purposes, the child and heir at law of the person so adopting him or her, unless and until such order is subsequentially revoked, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock; but on the decease of such person and the subsequent decease of such adopted child without issue, the property of such adopting parent still undisposed of shall descend to his or her next of kin, and not to the next of kin of such adopted child." Acts of Assembly, 1922, page 841.

In construing the effect of the above statute, we held that an adopted child was to be considered as an heir only of the person making the adoption and was not an heir of all the relatives of the adopter. *Munday* v. *Munday*, 164 Va. 145, 178 S. E. 917, 98 A. L. R. 187; *Dickenson* v. *Buck,* 169 Va. 39, 192 S. E. 748; *Fletcher* v. *Flanary, supra.*

In *Dickenson* v. *Buck, supra,* page 48, decided in 1937, we significantly said, "that an adopted child inherits from its foster parents but not through them."

In each of the cases next above cited, the rights claimed were based on the provisions of a will or deed, and not upon any statute of descent and distribution. It is important to note that we are here dealing with the right of an adopted child to inherit according to the statute of descent and distribution under the provisions of a subsequent statute.

In 1942, subsequent to our decision in *Dickenson* v. *Buck, supra,* the legislature revised, amplified and recodified the law relative to the adoption of minor children, Acts 1942, chapter 205, page 255, by adding to the Code a new chapter, numbered 216-A, and twelve new code sections numbered 5333-a to 5333-l, prescribing the procedure and incidents thereof, and repealed Code, 1936, section 5333, and the amendments thereto. Subsections (a) and (b) of the new section 5333-h, Code 1942, Michie, now respectively appear as sections 63-357 and 63-358 in Code of 1950.

By Acts of 1944, page 216, and Acts of 1946, pages 51, 202 and 499, certain procedural changes were made; but no change was made in section 5333h of the Code of 1942, Acts 1942, chapter 205, at page 258.

Sections 63-357 and 63-358 of the Code of 1950 read as follows:

"§ 63-357. Legal effects of adoption.—The natural parents, and the parents by previous adoption, if any, other than any such parent who is the husband or wife of one of the petitioners, shall, by such final order of adoption, be divested of all legal rights and obligations in respect to the child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them. Any child adopted under the provisions of this chapter shall, from and after the entry of the interlocutory order or from and after the entry of the final order where no such interlocutory order is entered, be, to all intents and purposes, the child of the person or persons so adopting him, and, unless and until such interlocutory order or final order is subsequently revoked, shall be entitled to all the rights and privileges, and subject to all the obligations, of a child of such person or persons born in lawful wedlock." (1942, p. 258; Michie Code 1942, § 5333h; R. P. 1948, § 63-357.)

"§ 63-358. Descent and distribution.—For the purpose of descent and distribution, a legally adopted child shall inherit, according to the statutes of descent and distribution, from and through both the natural parents and the parents by adoption from the time of entry of an interlocutory order. If an adopted child shall die intestate, without issue surviving him, his property shall pass, according to the statutes of descent and distribution, to those persons who would have taken had the decedent been the natural child of the adopting parents; provided, however, that any property, real or personal, derived by deed, or by gift, or by will, or by inheritance, from the natural parents, or from either of them or their kindred, and capable of identification as such, shall pass, according to the statutes of descent and distribution, as if he had not been adopted." (1942, p. 258; Michie Code 1942, § 5333h; R. P. 1948, § 63-358.)

It is argued that consanguinity is so fundamental in statutes of descent and distribution that it is necessary for the legislature in prescribing a course of descent out of the current of the blood of the intestate to use clear and explicit language. It is said that while adopters can make for themselves an heir, they cannot make one for their kindred.

The inheritable status of an adopted person is to be determined by the law-making body and not by the adopting parent or parents. "To inherit is to take as an heir at law under the statutes of descent and distribution." *Dickenson* v. *Buck, supra,* at page 44. One can dispose of his estate to whom he desires. If he fails to do this by will, the law steps in and names those who are to be the successors to his intestate property. If we can say that the words used in the adoption statute place an adopted child in the same status as a descendant or natural child of the adopting parents under our statutes of descent and distribution, it is sufficient to entitle such child to come under the latter statutes. No one is heir of a living person. No vested right arises therefore until the death of the person from whom one seeks to take.

In point here is the following statement from 1 Am. Jur., Adoption of Children, § 59, page 659:

"The right of an adopted child to inherit from its adopting parents is not affected by the circumstance that the Statute of Descent and Distribution does not refer to adopted children. That statute must be understood as merely laying down general rules of inheritance, and not as completely and accurately defin-

ing how the status is to be created which gives the capacity to inherit; it does not undertake to prescribe what is necessary to constitute the legal relation of parent and child.''

The legislature may, from time to time, change the course relating to descents and distributions. It may give to adopted children the right to share in the estate of their foster parents, and it may take this right away. *Fletcher* v. *Flanary, supra,* 185 Va. page 412; 2 C. J. S., Adoption of Children, § 63-b, page 455; *Irving Trust Co.* v. *Day,* 314 U. S. 556, 62 S. Ct. 398, 86 L. ed. 452, 137 A. L. R. 1093, 1098.

In 16 Am. Jur., Descent and Distribution, § 12, page 777, this is said:

''Succession to intestate property is at the will of and subject to the sovereign political power of the state in which it is situated. The theory of the law is that any participation in the estate of a deceased person is by grace of the sovereign power which alone has any natural or inherent right to succeed to such property * * *. It follows that succession to intestate property is by force and operation of statute at the time of death and not by force and operation of contract or right, although there is some minority authority that there is no such right.''

In Virginia, we have approved the rule that adoption statutes should be liberally construed to carry out the beneficent purposes of the adoption institution, and to protect the adopted child in the rights and privileges acquired by it as a result of the adoption. *Fletcher* v. *Flanary, supra,* page 409.

It is a well established rule of construction that a statute ought to be interpreted in such manner that it may have effect, and not to be found vain and elusive. Every interpretation that leads to an absurdity ought to be rejected. It is our duty to give effect to the wording of a statute, and allow the legislative intention to be followed.

This is the first time that the construction of the Act of 1942 has been brought before this court. The new Act retained the provisions of the prior statute relating to the effect of adoption as creating a status of parent and child, and added a new provision which enlarged the inheritable capacities of such child.

It may be presumed that, at the time of the enactment of the 1942 Act, the legislature was cognizant of our decisions construing the former adoption statute, and that its draftsman also had in mind the case of *Garland* v. *Harrison* (1837), 8 Leigh (35

Va.) 368, though that case involved inheritance by and from bastards.

There separate opinions were rendered by three distinguished judges. In the able opinion of Judge Tucker interpreting the words "inheriting or transmitting inheritance on the part of their mother", the meaning of the words "from or through" was adverted to and discussed. Although construction of that latter phrase was not necessary to a decision of the case, it was accorded a meaning as applied to inheritance by that learned judge which should be taken into consideration in arriving at a determination of the legislative intent when incorporating the words "from and through" into the statute. The significance given the phrase by him is in keeping with that now decided upon by us.

That the legislature entertained liberal views toward adopted children is shown by the provisions of the 1942 Act, which provides that the adopted child "shall be entitled to all the rights and privileges, * * *, of a child of such person or persons (the adopting parents) born in lawful wedlock," and "shall inherit according to the statutes of descent and distribution from and through both the natural parents and the parents by adoption * * *."

 The terms of the 1942 Act are general and comprehensive. The words "from and through" have a plain, simple and unmistakable meaning, with two significations, which cannot be ignored. The united words imply, in connection with inheritance, not only the obvious meaning that an adopted child shall inherit from the adopting parents, but that the adopting parents shall be the medium through which he may inherit from their relatives. Considered in connection with the broad and comprehensive language employed, they emphasize the specific intention to put an adopted child on the same footing as the natural child, thus giving him the right to take by representation what his adopting parent would have taken had he been alive, or what the natural child would have taken, had there been one, upon the death of his father intestate.

For the foregoing reasons, we are of opinion that the decree of the trial court should be affirmed, and it is accordingly so ordered.

*Affirmed.*