ELIZABETH H. HYMAN, ET AL.

V.

MARY ELIZABETH GLOVER

Record No. 830529

September 5, 1986

Present: All the Justices

*Joseph B. Hyman* for appellant.
*David R. Clarke* for appellee.

THOMAS, J., delivered the opinion of the Court.

In this appeal, we must construe the will of Janet McClymont Hannan who made certain bequests using the word "issue." The question for decision is whether the word "issue," as used by the testatrix, includes an adopted child.

The will was executed on March 13, 1977. It provided in pertinent part as follows:

> I direct my Executrix to divide [my estate] into as many equal shares as there shall be children, me surviving, plus the number of my children predeceasing me but leaving issue me surviving, and I give, devise and bequeath one of such shares to each of my children me surviving and one share to the issue of each deceased child of mine, such issue to take, collectively, per stirpes, the share of their deceased ancestor.

The testatrix died on April 2, 1982, survived by four children, Elizabeth H. Hyman, William Everett Hannan, Jr., Kenneth Heron Hannan, and Isabella Hannan Pfeil (hereinafter collectively referred to as "Hyman"). Her fifth child, James M. Hannan, had died of cancer in May 1977. Under a decree entered in January 1977 by the Probate Court of Cumberland County, Maine, James had adopted Mary Elizabeth Glover, his wife's 35-year-old daughter by a former marriage.

Mrs. Glover filed a petition asking the court below to declare that "petitioner is the issue of decedent's son James Hannan, and

as such is entitled to a prescribed share" of his mother's estate. Upon consideration of the pleadings, memoranda of law, and argument by counsel, the trial court ruled that, under Code § 64.1-71.1, "[t]he word 'issue,' standing alone, now includes persons who qualify by or through adoption." Accordingly, the court granted Mrs. Glover's motion for summary judgment and entered final judgment awarding her a one-fifth share of the testatrix's estate.

On appeal, Hyman contends that the trial court erred in its construction of the statute. We agree. Therefore, we will reverse the judgment of the trial court.

The trial court based its ruling upon Code § 64.1-71.1 which reads, in part, as follows:

> In the interpretation of wills and trusts, adopted persons and persons born out of wedlock are included in class gift terminology and terms of relationship in accordance with rules for determining relationships for purposes of intestate succession unless a contrary intent shall appear on the face of the will or trust.

The rules for determining relationships for purposes of intestate succession, referred to in Code § 64.1-71.1, are set forth in Code § 64.1-5.1. That statute provides in pertinent part as follows:

> If, for purposes of Title 64.1, a relationship of parent and child must be established to determine succession by, through or from a person:
> 1. An adopted person is the child of an adopting parent and not of the biological parents. . . .

The trial court was persuaded that Code § 64.1-5.1 places adopted children on the same footing as natural children. In addition, the trial court was persuaded that since the word "issue" defines a class, then, by operation of Code § 64.1-71.1, adopted children were automatically placed in that class regardless of the common law meaning of the word "issue." In our view, a different result is dictated by settled principles governing the construction of wills as well as by principles governing the construction of statutes that are in derogation of the common law.

Our analysis begins with an examination of the common law meaning of the word "issue." Since the infancy of the legal

system in this Commonwealth the word "issue" has meant "heirs of the body" and has been distinguished from seemingly similar words such as "children." *See Smith* v. *Chapman*, 11 Va. (1 Hen. & M.) 240, 290 (1807). At least since 1935 this Court has stated explicitly that the word "issue" does not include adopted children. In *Munday* v. *Munday's Ex'rs*, 164 Va. 145, 148-50, 178 S.E. 917, 918-19 (1935), we wrote as follows on that precise question: "*Issue* is ordinarily defined as descendants of a common ancestor. . . . To bring an adopted child within the accepted definition of the word 'issue' would certainly place upon the term a very strained construction. . . . Our conclusion is that under our statute 'issue' means natural descendants of a common ancestor." (Citations omitted.) Over the years we have reiterated what was said in *Munday*. *See Vicars* v. *Mullins*, 227 Va. 432, 437, 318 S.E.2d 377, 379 (1984); *Langhorne* v. *Langhorne*, 212 Va. 577, 578, 186 S.E.2d 50, 51, *cert. denied*, 406 U.S. 946 (1972); *Fletcher* v. *Flanary*, 185 Va. 409, 415, 38 S.E.2d 433, 435 (1946). As a matter of common law then, it is plain that in Virginia the word "issue" does not include adopted children.

Given the common law meaning of the word "issue," any statute enacted to change that meaning would necessarily be in derogation of the common law. Two important rules of construction come into play where a statute is in derogation of the common law. First, "[t]he common law is not to be considered as altered or changed by statute unless the legislative intent be plainly manifested." *Hannabass* v. *Ryan*, 164 Va. 519, 525, 180 S.E. 416, 418 (1935). Second, "[s]tatutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." *C. & O. Railway* v. *Kinzer*, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965).

Further, since this case involves the construction of a will, at least one other important rule of construction applies. We stated the rule in *Driskill* v. *Carwile*, 145 Va. 116, 120, 133 S.E. 773, 774 (1926), where we wrote that "words having a definite legal significance are to be understood as used in their definite legal sense. . . ."

Absent the statute relied upon by Glover, the rule set forth in *Driskill* would make this an "open and shut" case. We would give "issue" its definite legal meaning and simply conclude that "issue" does not include adopted children and, therefore, Glover cannot take under the will.

However, because the statute is in effect we must determine its impact upon the construction of the will. At the threshold of the statutory analysis, it is significant to us that the statute does not state specifically that the word "issue," when used in a will or trust, includes adopted children. Thus, it could be argued that the statute, on its face, does not make it "plainly manifest" that the General Assembly intended the change in the common law that is urged by Glover. This point is made even more persuasive when one considers that other states have made precisely such a change in their law. For example, in 1947, Maryland enacted the following provision: "The term 'child,' 'heir,' 'issue,' 'descendant' or an equivalent in a deed, grant, will or other written instrument shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof. . . ." Maryland Code § 16-78(c).

■ Moreover, the terms of the applicable statute itself do not lead to the conclusion advanced by Glover. There are two things that must occur before Code § 64.1-71.1 operates to bring adopted children into the application of will and trust language. There must exist a class gift; and a contrary intent must not appear on the face of the will or trust.

More specifically, the first part of the statute says, in part, that "adopted persons and persons born out of wedlock are included in class gift terminology and terms of relationship in accordance with rules for determining relationships for purposes of intestate succession. . . ." There is no dispute in this case that a gift to "issue" is a class gift. But Glover argues that the rules on determining relationships help establish that adopted children are included in the word "issue." According to Glover, since the rules set forth in Code § 64.1-5.1 say that an adopted child is the child of the adopting parent, it is plain that the General Assembly intended to put adopted children on the same footing as natural children. Glover argues from that proposition that "issue" now includes adopted children.

An almost identical argument was made and rejected in *Munday*, 164 Va. 145, 178 S.E. 917. In that case, a provision of the adoption statute provided that an adopted child was "to all intents and purposes the child and heir at law of the person so adopting him or her. . . ." Code § 5333 (1930). Based on the language of the adoption statute, the argument was made that it was the intent and purpose of the General Assembly "to put an adopted child on the same plane as a natural child" and that un-

less an adopted child was included in the meaning of the word "issue" the intent of the General Assembly would be thwarted. *Munday*, 164 Va. at 148, 178 S.E. at 918. We rejected that argument holding that the word "issue" did not include adopted children. Part of our rationale was that, at the time Code § 5333 was promulgated, the word "issue" had been previously used in other statutes and had always been defined to mean natural descendants.

■ By the same token, when Code § 64.1-71.1 went into effect in 1978, the word "issue" had a specific meaning that had always been applied. Thus, here, as in *Munday*, the fact that another statute, in this case Code § 64.1-5.1, sought to put adopted children on the same plane as natural children could not thereby alter the meaning of the word "issue."

■ Further, Code § 64.1-71.1 is qualified by the phrase "unless a contrary intent shall appear on the face of the will or trust." Counsel for Glover conceded at oral argument that Code § 64.1-71.1, by its terms, permitted the description of a class that excluded adopted children. The provision sets forth no guidelines for expressing the contrary intent. It does not suggest, for example, that the contrary intent cannot be expressed through the use of one word that has always been understood not to include adopted children. In other words, the statute does not say that the contrary intent cannot be expressed through the use of the word "issue." If Code § 64.1-71.1 is strictly construed, as it must be, then its terms are met by the use of the established word "issue."

Also significant is the fact that the parties agree that Code § 64.1-71.1 was enacted in response to a Law Review article written in 1978 concerning the general problem of the inheritance rights of children. Johnson, *Inheritance Rights of Children In Virginia*, 12 U. Rich. L. Rev. 275 (1978) (hereinafter cited as "*Inheritance Rights*"). That article is important here because it contains a discussion of the word "issue." In a discussion of lapsed bequests and devises, Professor Johnson pointed out a problem with the then existing Code § 64.1-64;* he wrote as follows:

---

\* The version of the statute discussed by Professor Johnson provided as follows:

When issue of devisee or legatee to take estate. — If a devisee or legatee die before the testator, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof be made or required by

The problem presented by section 64.1-64 is that its operative word, "issue," has the absolute biological meaning, "issue of the body" of the deceased beneficiary. *It is a matter of settled law and biology that while an adopted person can become one's child, he can never become one's issue, and thus an adopted child is precluded from taking under section 64.1-64.*

*Inheritance Rights*, 12 U. Rich. L. Rev. at 289 (emphasis added) (footnote omitted). Professor Johnson's concern with the 1968 version of Code § 64.1-64 led to its being changed by removing the word "issue" and substituting the phrase "children or their descendants." Acts 1978, c. 647.

Glover argues that the deletion of the word "issue" in the antilapse statute has no bearing on whether Code § 64.1-71.1 was intended to change the meaning of the word "issue" to include adopted children. According to Glover, her position is correct because the two sections deal with two separate things. In her brief she wrote as follows in an effort to explain her position: "Section 64.1-64 provides for disposition of property where a beneficiary is named but predeceases [the] testator *and the will is silent* as to whom the property should then go. Section 64.1-71.1 deals with determining eligible members of a class created by the testator."

■ Glover's argument does not answer the critical question raised by the General Assembly's actions in promulgating Code § 64.1-71.1 while at the same time amending Code § 64.1-64. If Code § 64.1-71.1 means what Glover says and makes all generic terms, including "issue," embrace adopted children then why was there a need to amend Code § 64.1-64. The answer is obvious. The General Assembly was fully aware that the word "issue" did not include adopted children. Had the 1968 version not been changed, Professor Johnson's concern would have remained valid. By substituting the phrase "children and their descendants" for the word "issue," in the statute, the General Assembly made two things unmistakably clear: (1) if it wanted to change the legal consequences of the word "issue" it knew how; and (2) that the word "issue," unless modified or redefined, does not include adopted children.

the will. This rule shall also apply to a devise or bequest to several jointly, one or more of whom die in the lifetime of the testator.

Code § 64.1-64 (1973 Repl. Vol.).

 We hold that Code § 64.1-71.1 does not operate to include adopted children within the meaning of the word "issue." If the General Assembly intends for adopted children to be included in the word "issue," it must say so. For all the foregoing reasons, the judgment of the trial court will be reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

POFF, J., dissenting.

I cannot join the majority in this opinion. Ancient notions of primogeniture and estates tail and the Statute de Donis have long since been abandoned in this Commonwealth. *See Orndoff* v. *Turman*, 29 Va. (2 Leigh) 200 (1830). Left surviving, however, was the case-law rule that a testator is presumed to have employed such words as "issue" to exclude "persons who qualify as such only by or through adoption". *Langhorne* v. *Langhorne*, 212 Va. 577, 578, 186 S.E.2d 50, 51 (1972). That presumption was rooted in medieval England's obsession with bloodlines in the devolution of property. *See generally* T. Bergin & P. Haskell, Preface to Estates in Land and Future Interests 9 (1966). As I read Acts 1978, c. 647, the General Assembly intended to reverse the presumption enunciated in *Langhorne.*

The 1978 Act, a comprehensive revision of statutory and case law, was patterned after statutory drafts recommended in a law review article authored by Professor J. Rodney Johnson, *Inheritance Rights of Children in Virginia*, 12 U. Rich. L. Rev. 275 (1978). The legislature repealed four sections in Title 64.1, entitled "Wills and Decedents' Estates", amended and reenacted four sections in that Title, added five new sections to that Title, and made certain conforming changes in related titles.

Code § 64.1-5.1, one of the new sections, provides that when a parent-child relationship "must be established to determine succession by, through or from a person . . . [a]n adopted person is the child of an adopting parent". To conform existing sections with the new definition, the General Assembly deleted as superfluous references in Code §§ 64.1-11 and -16 to adopted children and, in § 64.1-64, substituted the word "children" for the word "issue" so that all children, including a "child of an adopting parent", would enjoy the benefits of the lapsed legacy statute.

Code § 64.1-71.1, another new section, is addressed to courts construing generic terms in wills and trusts. Under that section, "adopted persons . . . are included in class gift terminology and terms of relationship". This canon of construction applies "to all wills of decedents dying after July one, nineteen hundred seventy-eight,[1] regardless of when executed."[2] *Id.*

This new canon must be applied in the interpretation of a will "unless a contrary intent shall appear on the face of the will". *Id.* The majority holds that the word "issue" must be given its common-law meaning and that the testatrix's use of that word evinces an intent to restrict her class gift to her biological grandchildren or their biological descendants. But a gift to "issue" is archetypically "class gift terminology", and courts of this Commonwealth, including the Supreme Court, are commanded by statute to interpret such language to connote testamentary intent to *include* adopted persons in the class eligible for the gift. Yet the majority construes this very language as proof of intent to *exclude* them.[3] Other courts, applying statutes similar to those enacted by our General Assembly in 1978, have felt bound by the statutory mandate. *See Wheeling Dollar Sav. & Trust Co.* v. Hanes, 160 W. Va. 711, 719, 237 S.E.2d 499, 504 (1977); *accord Wielert* v. *Larson*, 84 Ill. App. 3d 151, 154, 404 N.E.2d 1111, 1113 (1980). *See also Scribner* v. *Berry*, 489 A.2d 8 (Me. 1985); *Lewis* v. *Green*,

---

[1] Because the testator in *Vicars* v. *Mullins*, 227 Va. 432, 318 S.E.2d 377 (1984), a case cited by the majority, had died in 1904, Code § 64.1-71.1 was not applicable to the question on appeal, and we applied the common-law presumption enunciated in *Langhorne*. In a recent note commenting upon the decision in *Vicars* and the effect of the enactment of Code § 64.1-71.1 which he had drafted, Professor Johnson said: "Although this case is valuable as a good explanation of prior law, it will have no application to wills of decedents dying after July 1, 1978 (regardless of when executed), which will be governed by a statute passed in 1978 for the express purpose of reversing these common law presumptions." Johnson, *Wills, Trusts, and Estates*, 19 U. Rich. L. Rev. 779, 792 (1985).

[2] Code §§ 64.1-5.1 and -71.1 are declarations of public policy. In the formulation of public policy, the legislature has the power to amend laws affecting testamentary dispositions retroactively, and a testator is charged with knowledge of that fact when he executes his will. Indeed, a testamentary gift, valid when the will was executed, may be completely revoked retroactively by operation of "a statutory declaration of public policy concerning wills" enacted before the testator's death. *Papen* v. *Papen*, 216 Va. 879, 883, 224 S.E.2d 153, 155 (1976) (revocation by divorce from spouse-beneficiary).

[3] It should be added that the majority reaches this conclusion in the face of facts which tend to defeat it. Janet Hannan executed her will after the adoption decree was entered, and in a letter addressed to Mrs. Glover following James Hannan's death, the testatrix referred to her late son as "your Dad" and said, "[W]e are all so happy — Liz to have you in the family".

389 So. 2d 235 (Fla. App. 1980); *In re Trusts Created by Agreement with Harrington*, 311 Minn. 403, 250 N.W.2d 163 (1977).

In effect, the majority has disinterred and applied a case-law rule of construction buried by the General Assembly. As I perceive the public-policy standards imposed by the 1978 Act, adopted persons now stand on the same footing as biological children for purposes of both testate and intestate inheritance, provided, of course, that a testator may *expressly* confine the beneficiaries of a class gift to those related by blood or *expressly* exclude those who are not.

Applying the statutory canons of construction in effect in Virginia on the date of the testatrix's death, *see* Code § 64.1-62, I would hold that Mrs. Glover is included in the class gift terminology employed in the Hannan will and, as the sole surviving child of her adopting parent, is entitled to take, through him, his share of the testamentary gift. Accordingly, because I find no merit in the appellants' other assignments of error, I would affirm the judgment.

CARRICO, C.J., and COCHRAN, J., join in dissent.