# CIRCUIT COURT OF NORTHUMBERLAND COUNTY

W. T. Thompson, III, et al.

v.

George C. Wright

January 11, 1999

BY JUDGE JOSEPH E. SPRUILL, JR.

In this proceedings, we are asked to construe the provisions of a deed drafted in 1941, wherein Mrs. Jessie Ball duPont conveyed a tract of land in Northumberland County known as Hurstville. By the deed, she conveyed Hurstville to her sister and brother-in-law, two nephews and a niece in a series of joint and survivor successive life estates. Following the death of the survivor of the life tenants, Hurstville would pass in fee simple absolute "to the children of Thomas Ball Wright, John Hopkins Baker, and Jessie Baker Thompson." The deed closes with a contingent conveyance of Hurstville to "the great grandsons of Warner Ball, Sr., deceased, bearing the name of Ball, who shall then be living" which interest would take effect only if no "children" of Thomas Ball Wright, John Hopkins Baker, or Jessie Baker Thompson survived the last of Hurstville's life tenants. Warner Ball, Sr., was Mrs. duPont's uncle, her father's brother.

John Hopkins Baker died without children. The complainants are the children of Jessie Baker Thompson. The defendant is the adopted son of Thomas Ball Wright. He was adopted in 1953 after he had attained his majority. The question for decision is whether the defendant has an interest in Hurstville. More specifically, as an adopted son, is he considered in law to be a child of Thomas Ball Wright within the context of the deed.

The plaintiffs, in contending that he is not, assert that the grantor's intention controls; that it is clear Mrs. duPont intended to include only the natural children of the named persons; that Virginia law in 1941 did not allow

for the adoption of adults; and that Mrs. duPont, in any event, was a stranger to the adoption and under the law existing at the time was presumed not to intend to include the defendant as a beneficiary under the deed, absent clear evidence to the contrary.

The defendant argues that there is a distinction between the terms "issue" and "children"; that use of the term "children" implies a more inclusive meaning and may include adopted children; that the deed must be construed so as to give effect to every word, and thus it must be inferred that had Mrs. duPont specifically intended to limit the gift to her bloodlines, she would have used a more limited term. Defendant further argues that Mrs. duPont was presumed to have been aware of the adoption laws extant at the time she executed the deed, and at that time the law accorded adopted children the same rights and privileges as birth children.

The intent of the parties to a deed is paramount and must be determined by construing the instrument as of the date and under the circumstances of its execution. *Phipps v. Leftwich*, 216 Va. 706 (1976). This deed was executed in 1941. At that time, the defendant was nine or ten years old. He would not be adopted for another twelve years. Thus, it was impossible for Mrs. duPont to address him specifically in her deed.

In 1941 and until 1987, the Virginia Supreme Court followed the "stranger to the adoption" rule.

> Where one makes a gift in his will to his own "children," he is presumed to be intending the word "children" to include all of his children, whether biological or adopted. Where, on the other hand, one makes a gift in his will to the "children," "heirs," "descendants," etc., of another, it is presumed that the testator did not intend to include within those designations individuals in the positions in question as the result of adoption but that he intended only "blood" children, heirs, descendants, etc., to take. Why? Because the testator was a stranger to the adoptions in question and presumably did not wish to be bound thereby.

J. R. Johnson, "Inheritance Rights of Children in Virginia," 12 *U. Rich. Law Rev.* 275 (1978).

In *Merson v. Wood*, 202 Va. 485 (1961), the Supreme Court, in rejecting the claim that the testator's son's adopted daughter was an "heir" and thus entitled to take under testator's will, held:

> Generally, the terms issue, children, heir and words of similar import, in a will, are intended to refer to natural or blood relationships and would not include an adopted child in the absence of circumstances clearly showing that the testator so intended.

This indicates that in 1961, the Supreme Court recognized and followed the stranger to the adoption rule.

It is true that the grantor is charged with knowledge of adoption laws, that they are subject to change, and that the law in effect at the death of the life tenant (and not the time of the grantor's death) is controlling. *McFadden v. McNorton*, 193 Va. 455 (1952); *Merson*, 202 at 489. But at the time the deed was executed in 1941, and at the time of the death of the life tenant, Thomas Ball Wright, in 1964, the stranger to the adoption rule was in effect in Virginia. Virginia Code § 55-49.1 was enacted in 1987 and changed the stranger to the adoption rule with respect to deeds. The statute, however, does not operate retrospectively. Therefore, because the rule was in effect in 1964, the time the defendant's rights, if any, are to be determined, the defendant had the burden to clearly show that the grantor either intended to include him or alternatively did not intend to exclude him, as a beneficiary under the deed. The defendant has been unable to carry this burden.

The evidence suggests that a cordial but not close relationship existed between Mrs. duPont and defendant. Nonetheless, her contingent conveyance to the great grandsons (and not great granddaughters) of her uncle bearing the name of Ball manifest her desire to keep Hurstville within the Ball bloodline. This provision in the deed belies any contention that she intended that the property would pass to an adult person adopted twelve years after the deed was executed who was not a member of the Ball bloodline.

This conclusion is supported by the Supreme Court's decisions in *Newsome v. Scott*, 200 Va. 833 (1959), and *Fletcher v. Flanery*, 185 Va. 409, 38 S.E.2d 433 (1946). In *Fletcher*, the Court, after invoking the wisdom of Alice's friend, Humpty Dumpty, concluded that an adopted son would not inherit under a bequest to "George M. Brown during his natural life and at his death to his children, if any." The Court reasoned that the adopted son would take under the statute as an heir of his adoptive father who had, by the adoption, deliberately assumed the obligations of a father. But his adoptive father's father "owed him nothing, and never undertook to become his grandfather." Moreover, in this case, the contingent bequest to the next of kin on the father's side showed, said the Court, that "the clan instinct was strong within him." This could be said of Mrs. duPont.

In November, 1961, Mrs. duPont wrote to Thomas Ball Wright about a trust she had established for him. In this letter, she states:

> Had you have had children of your body, the income from your trust would have gone to them at your death. Having no children of your body, naturally, the income from your trust will go elsewhere on your death. (See Complainant's Exhibit No. 3.)

This is strong evidence of Mrs. duPont's views and gives considerable support to the position advocated by complainants' counsel.

The defendant offers a number of cases from other jurisdictions which tend to support his position. We are bound, however, by Virginia precedent and therefore conclude that the relief requested by the complainants should be granted.